UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NANCY HARDING and JEFFREY HARDING, on Behalf Of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>JACOBY & MEYERS, LLP, FINKELSTEIN & PARTNERS, LLP, TOTAL TRIAL SOLUTIONS, LLC, ANDREW FINKELSTEIN and KENNETH OLIVER,<br><br>Defendants. | Civil Action No:<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nancy Harding ("N. Harding") and Plaintiff Jeffrey Harding ("J.Harding") (collectively "Plaintiffs"), on behalf of themselves and the class described below, allege on their own knowledge as to their individual circumstances, and upon information and belief as to all other matters based upon the investigation of their counsel against Defendants Jacoby & Meyers, LLP ("J&M"), Finkelstein & Partners, LLP ("F&P"), Total Trial Solutions, LLC ("TTS"), Andrew Finkelstein ("AF") and Kenneth Oliver ("KO").

## THE PARTIES

1.     Plaintiff N. Harding is a resident of Rockland County, New York and was a client of the law firms and lawyers named herein as Defendants.

2.     Plaintiff J. Harding is a resident of Mahwah, New Jersey and was a client of the law firms and lawyers named herein as Defendants.

3.     Jacoby & Meyers, LLP ("J&M") is a New York based limited liability partnership operating as a law firm.  According to J&M's website, it is "America's largest full-service consumer law firm, founded in 1972 with the goal of making top-quality legal representation available to everyone."  At all relevant times, AF and KO were partners in J&M.

4.      J&M has two offices in New Jersey: Newark and Edison.  J&M has thirteen offices throughout New York State – in Manhattan, the Bronx, Hempstead, Kingston, Middletown, New Windsor, Newburgh, Port Jervis, Queens, Spring Valley, Syracuse, Vestal, and Wappingers Falls.  J&M's principal New York office is located at the same address 1279 Route 300, Newburgh, New York 12250 in Orange County, New York, as F&P.  F&P and J&M share offices in New Jersey and at least 12 offices in New York.

5.      Defendant Finkelstein & Partners, LLP ("F&P") is a New York based limited liability partnership which operates as a law firm in New York and New Jersey.  F&P's office is located at 1279 Route 300, Newburgh, New York 12250.  Upon information and belief, F&P is part of J&M.  The principal office is the same, each entity has substantially overlapping attorneys and "partners", and the managing partner of each is Defendant AF.

6.      Defendant Andrew Finkelstein ("AF") is an attorney admitted to the bar of the State of New York and is the Managing Partner of F&P as well as J&M.  His main office is located at 1279 Route 300, PO Box 1111, Newburgh, NY 12551.

7.      Defendant Kenneth Oliver is and was at all relevant times an attorney admitted to the bar of the State of New York, a partner of F&P and J&M.  His office is located at 1279 Route 300, PO Box 1111, Newburgh, NY 12551.

8.      Defendant Total Trial Solutions, LLC ("TTS") purports to be a litigation support company which can provide services to attorneys in litigation.  TTS's office is located at 1279 Route 300, Newburgh, New York 12250.  TTS is owned in whole or in part by Defendant AF and by defendant KO.  F&P, AF, KO and J&M retained Plaintiffs for litigation without client's consent or knowledge.

2

## JURISDICTION AND VENUE

9.      Plaintiffs bring this action under common law of the States of New Jersey and New York, the Judiciary Law Sec. 487 and the General Bus. Law Sec. 349 and New Jersey's Consumer Fraud Act.

10.      Jurisdiction lies with this Court under the Class Action Fairness Act.

11.      Venue is proper in this district because a substantial part of the acts and omissions forming the basis of this action occurred within this district and defendants' principle places of business are within this district.

## FACTUAL ALLEGATIONS

## NANCY HARDING

12.      In or around November 2010, N. Harding suffered a personal injury.  She subsequently retained F&P as her attorney to prosecute her personal injury lawsuit on her behalf. At the time, AF was a partner of A&F and J&M. KO was a partner of AF, J&M and A&F at times relevant to AF, JM and F&P's representation of N. Harding.

13.      According to its website, F&P has 22 partners, 1 senior counsel, 15 "F&P attorneys" and 35 "of counsel."  The website also touts its "In-house Investigation Division" as an accident investigation division" offering "expert analysis of advice while assisting in the preparations for trial and employs 16 full time investigators."

14.      N. Harding had a "slip and fall" accident at Town & Country Ceramic Tile, Inc. on November 12, 2010.  Two months later she signed a "Contingency Fee Retainer Agreement" with Finkelstein & Partners LLP.

15.      On or about January 19, 2011, Ms. Harding entered into a retainer agreement that was drafted by Defendants that was signed by AF and that named F&P as N. Harding's attorney.

3

*See* Exhibit A.  Upon information and belief, defendants used a standard form of retainer

agreement with all its clients for representation in litigation in New York.

      16.    The retainer agreement represents that the "Law Firm will perform the following

legal services if necessary or appropriate . . .: investigations of claims; determining responsible

parties; preparing and filing a lawsuit; settlement procedures and negotiations; prosecution of

claims by arbitration or legal action until settlement award or judgment is obtained."

      17.    The retainer agreement provides for a 33.3 % contingency arrangement. *Id.* at ¶

3(a).  The retainer agreement also provides that "Law firm is authorized to incur *reasonable*

costs and expenses in performing legal services under this Agreement." *Id.* at ¶4(a) (emphasis

supplied).

      18.    The retainer also provides:

      4.    <u>Litigation Costs and Expenses</u>:

      (a) *Advancement of Costs*

      "Law Firm is authorized to incur reasonable costs and
expenses in performing legal services under this Agreement."  In
accordance with applicable law, regardless of the outcome of this
matter, Client shall remain responsible to the Law Firm for such
advances.  The Law Firm utilizes very extensive trial support
services in order to obtain the best possible verdict or settlement,
which can result in large expenditures by the Law Firm.  The costs,
expense and disbursements necessary in this case may include any
or all of the following items:  court filing fees; process serving
fees; witness fees; private investigator fees; investigative fees;
photographer graphic artist fees; fees to experts for consultation
and/or appearance at deposition or trial; mail, messenger and other
delivery charges; parking and other local travel; transportation,
meals, lodging and all other costs of necessary out-of-town travel;
long distance telephone charges; photocopying, imaging, faxing
and digital storage charges; and computerized legal research
charges; travel costs of attorneys, paralegals, witnesses and expert
witnesses who may have to travel to attend inspections,
examinations, depositions or trials; medical record retrieval fees,
audiovisual rental and other equipment and exhibit rental; and film

4

and image duplication; computerized trial presentation software such as PowerPoint and/or Trial Director together with audiovisual equipment. This list is not exclusive. In addition to the foregoing expenses, other charges may be incurred in connection with the performance of the services described herein by Law Firm. Law Firm may employ such technical experts or investigators who, in its opinion, are necessary to investigate the facts surrounding Client's case or claim. All such experts shall report exclusively to Law Firm. It is agreed that Law Firm may decline, in its sole discretion, to advance costs and disbursements for expert testimony, investigation or other similar services.

With respect to what the total costs and expenses will be at the end of year case, it is impossible to give you precise figure as this amount can vary considerably from case to case depending on many factors such as liability issues, nature and extent of the injuries, number and type of experts, and the magnitude of the defense experts. However, we can tell you that your costs and expenses, particularly if your claims involve traumatic brain injuries or other neurological impairment, may be substantial because of the volume of medical records and the large number of highly specialized medical experts frequently needed to investigate and prove such claims. In addition, you costs and expenses may be substantial, even if your case ultimately settles, because we believe it is in your best interest to prepare every case as if it is going to be tried to verdict as we do not know in advance which cases will settle.

(b) *Independent Contractors*

During the course of the investigation and litigation of your case, we may hire various third-party companies and individuals, of example, medical and technical expert witnesses and/or consultants, economists, investigation firms, nurses and doctors, travel consultants, record requisition firms, forensic accountants, story consultants, and litigation technology consultants. Investigators are often hired for various purposes such as finding and obtaining statements from witnesses, or serving subpoenas. Record requisition firms may be hired to assist us in obtaining and collating the often voluminous medical and other records that we are required to obtain and review to properly prosecute your case. Nurses and doctors may be hired as consultants to conduct medical-legal chart reviews. Bookkeeping services may be engaged to collate the medical expenses form the various medical records, insurance and disability claims files and other records, to calculate and properly prepare claims to recover these costs. Story

5

consultants or jury consultants are theater or psychology professionals who may be hired to assist us in developing a more dramatic and forceful presentation of your case.

    (c) *Total Trial Solutions, LLC, Med Trial Solutions, LLC, and CineTrial Solutions, LLC*

Amon the independent contractors we use in Total Trial Solutions, LLC, ("Total Trial"), MedTrial Solutions, LLC, ("MedTrial"), and CineTrial solutions, LLC ("CineTrial"). Total trial provides a very broad menu of litigation support services. These include, but are not limited to: story and biographical work by accomplished writers, computerized time lines and trial exhibit creation, forensic accounting, forensic data base searches, investigation including scene inspection and witness statements, transportation, translator/interpreter services, in Court technical support, time coding documents for trial/mediation/arbitration. MedTrial provides a very broad menu of medical-legal support services. These include, but are not limited to: medical record review, medical research, research and document retrieval, life care plan analysis, transcript review, expert interview, expert screening and review, nurse accompaniment and defense medical and treating doctor examinations. CineTrial provides a very broad menu of video and image related services. These include, but are not limited to: day in the life films, video and photographic essays, video witness statements, and video defense medical and treating doctor examinations, and video depositions.

19.    The retainer also provides in relevant part, referring to independent TTS:

Total Trial, Med Trial and Cine Trail are owned in whole or in part by Andrew Finkelstein and Kenneth Oliver, partners of the Law firm.

Mr. Finkelstein and Mr. Oliver will benefit from the use of these services by the Law Firm. Consequently, you have the right to inquire about the charges for these services and insist that any such services be obtained from other vendors to avoid any potential conflict of interest. Be aware, these companies are not a law firm, are not part of the Law Firm and do not provide legal services. However we have found that the use of these companies allows for a seamless offering of services necessary for exemplary trial work.

You should be aware that most of the services obtained from Total Trial, MedTrial, and CineTrial can be obtained from other vendors. The cost for the services provided by these companies will vary

> when provided by other vendors; and, it is possible that the cost of a particular service, when offered by other vendors may be less expensive than those offered by Total Trial, MedTrial, and CineTrial. However, the firm believes Total Trial MedTrial, and CineTrial provide superior services and you will benefit from the services provided by these companies notwithstanding this possible added expense. If at any time the Law Firm believes another vendor will provide comparable services for less it will notify you in order to give you the option of using the other vendor.

*Id.* at ¶4(c).

20.     N. Harding was never informed that Total Trial was being retained for her case.

21.     N. Harding was never informed that Total Trial was providing services, or

charges or basis of TTS' compensation.

22.     N. Harding never saw invoices rendered by Total Trial.

23.     Defendants did not give N. Harding the opportunity to ask F&P, J&M, KO or AF

to seek other quotes from vendors to contest these charges before she received her settlement

monies.  Instead, these Total Solution charges, and the other charges that were included in N.

Harding's statement, were presented as take or leave it expenses and deducted from N. Harding's

settlement funds before she could receive her settlement monies.

24.     Prior to being billed, Defendants did not disclose to N. Harding that Defendants

were actually using Total Trial to provide any services in furtherance of her litigation. Nor did

Defendants disclose any charges at all that they incurred on her behalf prior to N. Harding

received her final itemized statement.

25.     Defendants never notified N. Harding that there were other vendors that would

provide a comparable service to Total Trial for less than what Total Trial charges N. Harding.

7

26.     Upon information and belief, Defendants failed to adequately determine whether another vendor that would provide comparable services for less existed for the services provided for N. Harding's case as well as other members of the Class.

27.     N. Harding was never informed of the nature of the services purportedly provided by TTS, the reason for their retention, or the benefit to Plaintiff which would justify the expense.

28.     Her lawsuit was filed on or about March 29, 2011.  Her EBT was not conducted until approximately April 2012.  Her claims settled after Defendants filed a motion for summary judgment.

29.     F&P settled N. Hardy's case for $195,000.00.  She netted $98,746.21 which was reduced drastically by liens arising out of medical costs incurred due to the severe nature of her injuries.  F&P took a contingent fee of $57,938.6.  From her settlement also were deducted $17,131.16 of medical liens and $21,183.66 of disbursement allegedly advanced by F&P.  The payment and itemization of medical lien was not documented.  Later N. Hardy paid an additional $10,000.00 towards liens.

30.     N. Harding was charged, *inter alia*, $270.31 for "Investigation" to "Executive Investigative"; $1,500.00 to "The Garretson Resolution" for "Lien Resolution Service"; $524.00 for "Interest On Case Funding" to "Peachtree."

31.     N. Harding was charged the following amounts by TTS:

| $ 225.00   | November 21, 2011 | "Locate Liability Expert" |
|------------|-------------------|---------------------------|
| $2,599.52  | March 12, 2012    | "Review File/Drafting"    |
| $    23.75 | October 8, 2012   | "Professional Service"    |
| $1,019.37  | May 14, 2012      | "File/Review/Editing"     |

8

$ 2.94     December 31, 2012    No Entry Description

The total is $3,870.68.

32.     At the conclusion of N. Harding's personal injury case, she received an itemized statement of deductions of her net settlement check that included, among other charges, five separate charges from Total Trial Solutions. *See* Exhibit B.

33.     These charges appear to be beyond the scope of what the retainer advised clients that TTS would be retained to do.

34.     The description of TTS' services appear to be the type of services which are reasonably expected to be performed by law firms as part of the services to be provide under a contingent retainer agreement and included as part of the contingent percentage fee to be paid by client to a law firm.

35.     Moreover, the statement failed to provide the billable rates for Total Trial, making further evaluation of the charges impossible.

## JEFFREY HARDING

36.     In or around May 2011, J. Harding suffered a "slip-and-fall" personal injury. He subsequently retained AF as his attorney to prosecute his personal injury lawsuit on his behalf. At the time, AF was a partner of A&F and J&M. KO was a partner of AF, J&M and A&F at times relevant to AF, JM and A&F's representation of J. Harding.

37.     According to its website, A&F has 22 partners, 1 senior counsel, 15 "F&P attorneys" and 35 "of counsel." The website also touts its "In-house Investigation Division" as an accident investigation division" offering "expert analysis of advice while assisting in the preparations for trial and employs 16 full time investigators."

38.    In or about May 2011, J. Harding suffered an injury.  Later he signed a retainer

for legal services with some or all the defendants.  His lawsuit was filed on or about November

28, 2011.  F&P did not have the summons served until January 16, 2012.  On January 24, 2013

A&F filed a Note of Issue certifying that the case was ready for trial.  His case settled in

approximately August 2013.

39.    Upon information and belief, defendants used a standard form of retainer

agreement with all its clients for representation in litigation in New York and with J. Harding.

40.    The retainer agreement represents that the "Law Firm will perform the following

legal services if necessary or appropriate . . .: investigations of claims; determining responsible

parties; preparing and filing a lawsuit; settlement procedures and negotiations; prosecution of

claims by arbitration or legal action until settlement award or judgment is obtained."

41.    The retainer agreement provides for a 33.3 % contingency arrangement. *Id.* at ¶

3(a).  The retainer agreement also provides that "Law firm is authorized to incur *reasonable*

costs and expenses in performing legal services under this Agreement." *Id.* at ¶4(a) (emphasis

supplied).

42.    The retainer also provides:

    4.    <u>Litigation Costs and Expenses</u>:

        (d) *Advancement of Costs*

        "Law Firm is authorized to incur reasonable costs and
expenses in performing legal services under this Agreement."  In
accordance with applicable law, regardless of the outcome of this
matter, Client shall remain responsible to the Law Firm for such
advances.  The Law Firm utilizes very extensive trial support
services in order to obtain the best possible verdict or settlement,
which can result in large expenditures by the Law Firm.  The costs,
expense and disbursements necessary in this case may include any
or all of the following items:  court filing fees; process serving
fees; witness fees; private investigator fees; investigative fees;

10

photographer graphic artist fees; fees to experts for consultation and/or appearance at deposition or trial; mail, messenger and other delivery charges; parking and other local travel; transportation, meals, lodging and all other costs of necessary out-of-town travel; long distance telephone charges; photocopying, imaging, faxing and digital storage charges; and computerized legal research charges; travel costs of attorneys, paralegals, witnesses and expert witnesses who may have to travel to attend inspections, examinations, depositions or trials; medical record retrieval fees, audiovisual rental and other equipment and exhibit rental; and film and image duplication; computerized trial presentation software such as PowerPoint and/or Trial Director together with audiovisual equipment.  This list is not exclusive.  In addition to the foregoing expenses, other charges may be incurred in connection with the performance of the services described herein by Law Firm.  Law Firm may employ such technical experts or investigators who, in its opinion, are necessary to investigate the facts surrounding Client's case or claim.  All such experts shall report exclusively to Law Firm.  It is agreed that Law Firm may decline, in its sole discretion, to advance costs and disbursements for expert testimony, investigation or other similar services.

With respect to what the total costs and expenses will be at the end of year case, it is impossible to give you precise figure as this amount can vary considerably from case to case depending on many factors such as liability issues, nature and extent of the injuries, number and type of experts, and the magnitude of the defense experts.  However, we can tell you that your costs and expenses, particularly if your claims involve traumatic brain injuries or other neurological impairment, may be substantial because of the volume of medical records and the large number of highly specialized medical experts frequently needed to investigate and prove such claims.  In addition, you costs and expenses may be substantial, even if your case ultimately settles, because we believe it is in your best interest to prepare every case as if it is going to be tried to verdict as we do not know in advance which cases will settle.

(e) *Independent Contractors*

During the course of the investigation and litigation of your case, we may hire various third-party companies and individuals, of example, medical and technical expert witnesses and/or consultants, economists, investigation firms, nurses and doctors, travel consultants, record requisition firms, forensic accountants, story consultants, and litigation technology consultants.

11

Investigators are often hired for various purposes such as finding
and obtaining statements from witnesses, or serving subpoenas.
Record requisition firms may be hired to assist us in obtaining and
collating the often voluminous medical and other records that we
are required to obtain and review to properly prosecute your case.
Nurses and doctors may be hired as consultants to conduct
medical-legal chart reviews.  Bookkeeping services may be
engaged to collate the medical expenses form the various medical
records, insurance and disability claims files and other records, to
calculate and properly prepare claims to recover these costs.  Story
consultants or jury consultants are theater or psychology
professionals who may be hired to assist us in developing a more
dramatic and forceful presentation of your case.

> (f) *Total Trial Solutions, LLC, Med Trial Solutions, LLC,
> and CineTrial Solutions, LLC*

Amon the independent contractors we use in Total Trial Solutions,
LLC, ("Total Trial"), MedTrial Solutions, LLC, ("MedTrial"), and
CineTrial solutions, LLC ("CineTrial").  Total trial provides a very
broad menu of litigation support services.  These include, but are
not limited to:  story and biographical work by accomplished
writers, computerized time lines and trial exhibit creation, forensic
accounting, forensic data base searches, investigation including
scene inspection and witness statements, transportation,
translator/interpreter services, in Court technical support, time
coding documents for trial/mediation/arbitration.  MedTrial
provides a very broad menu of medical-legal support services.
These include, but are not limited to:  medical record review,
medical research, research and document retrieval, life care plan
analysis, transcript review, expert interview, expert screening and
review, nurse accompaniment and defense medical and treating
doctor examinations.  CineTrial provides a very broad menu of
video and image related services.  These include, but are not
limited to:  day in the life films, video and photographic essays,
video witness statements, and video defense medical and treating
doctor examinations, and video depositions.

43.    The retainer also provides in relevant part, referring to independent TTS:

Total Trial, Med Trial and Cine Trail are owned in whole or in part
by Andrew Finkelstein and Kenneth Oliver, partners of the Law
firm.

Mr. Finkelstein and Mr. Oliver will benefit from the use of these
services by the Law Firm. Consequently, you have the right to

inquire about the charges for these services and insist that any such services be obtained from other vendors to avoid any potential conflict of interest. Be aware, these companies are not a law firm, are not part of the Law Firm and do not provide legal services. However we have found that the use of these companies allows for a seamless offering of services necessary for exemplary trial work.

You should be aware that most of the services obtained from Total Trial, MedTrial, and CineTrial can be obtained from other vendors. The cost for the services provided by these companies will vary when provided by other vendors; and, it is possible that the cost of a particular service, when offered by other vendors may be less expensive than those offered by Total Trial, MedTrial, and CineTrial. However, the firm believes Total Trial MedTrial, and CineTrial provide superior services and you will benefit from the services provided by these companies notwithstanding this possible added expense. If at any time the Law Firm believes another vendor will provide comparable services for less it will notify you in order to give you the option of using the other vendor.

*Id.* at ¶4(c).

44.     J. Harding was never informed that Total Trial was being retained for his case.

45.     J. Harding was never informed that Total Trial was providing services, or informed of the charges or the basis of TTS' compensation.

46.     J. Harding never saw invoices rendered by Total Trial.

47.     Defendants did not give J. Harding the opportunity to ask F&P, J&M, KO or AF to seek other quotes from vendors to compare these charges before he received his settlement monies. Instead, these Total Solution charges, and the other charges that were included in J. Harding's statement, were presented as incurred expenses and deducted from J. Harding's settlement funds before J. Harding could receive his settlement monies.

48.     Prior to being billed, Defendants did not disclose to J. Harding that Defendants were actually using Total Trial to provide any services in furtherance of his litigation. Nor did

13

Defendants disclose any charges at all that they incurred on her behalf prior to J. Harding receiving his final itemized statement.

49.     Defendants never notified J. Harding that there were other vendors that would provide a comparable service to Total Trial for less than what Total Trial charged J. Harding.

50.     Upon information and belief, Defendants failed to adequately determine whether another vendor that would provide comparable services for less existed for the services provided for J. Harding's case as well as other members of the Class.

51.     J. Harding was never informed of the nature of the services purportedly provided by TTS, the reason for their retention, or the benefit to Plaintiffs which would justify the expense.

52.     F&P settled J. Harding's case for $99,280.00. J. Harding netted $58,681.00. F&P took a contingent fee of $29,340.06. From his settlement was deducted $11,258.50 of disbursements allegedly advanced by F&P.

53.     J. Harding was charged, *inter alia*, $3,640.00 for "Bremer Forensic Consultant" for unspecified services.

54.     J. Harding also was charged the following amounts by TTS which were deducted from the recovery without his prior knowledge or consent :

| | | |
|---|---|---|
| $240.00 | September 24, 2012 | "Future Special Needs" |
| $23.75 | April 23, 2013 | Unspecified |
| $2,681.00 | December 10, 2012 | "File Review" |
| $23.65 | December 14, 2012 | "Color Printouts" |

The total is $2,968.40.

14

55.     At the conclusion of J. Harding's personal injury case, he received an itemized statement of deductions of his net settlement check that included, among other charges, separate charges from Total Trial Solutions. *See* Exhibit C.

56.     These charges appear to be beyond the scope of what the retainer advised clients that TTS would be retained to do.

57.     The description of TTS' services appear to be the type of services which are reasonably expected to be performed by law firms as part of the services to be provide under a contingent retainer agreement and included as part of the contingent percentage fee to be paid by client to a law firm.

58.     Moreover, the statement failed to provide the billable rates for Total Trial, making further evaluation of the charges impossible.

**CLASS ACTION ALLEGATIONS**

59.     Plaintiffs bring this action on behalf of themselves and all clients of F&P, J&M and/or Andrew Finkelstein who were billed for litigation services from Total Trial Solutions, LLC, MedTrial Solutions, LLC or CineTrial Solutions, LLC.

60.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3).

61.     Plaintiffs satisfy the requirements for class certification as provided by Fed. R. Civ. P. 23(a) as set out in detail below.

62.     The membership of the proposed Class "is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable." Upon information and belief based on representations by defendants on their respective websites the members of the class are so numerous as to make joinder impracticable.

15

63.     During the Class period Defendants engaged in a uniform course of conduct towards all their clients in New York using a standard form of retainer and a standard procedure for billing clients' fees of TTS.

64.     There are questions of law or fact common to the Class which predominates over any questions affecting only individual members. Specifically, the common questions of fact or law include whether, throughout the Class Period:

        a.     Whether defendants acts breached fiduciary duties;

        b.     Whether defendants acts constituted violations of GBL Section 349;

        c.     Whether defendants conduct violated Judiciary Law 487;

        d.     Whether defendants breached the terms of their retainer agreement with Plaintiffs and members of the class.

        e.     The proper measure of damages.

        f.     Whether defendants must forfeit their fees.

65.     The Plaintiffs' claims are typical of those of the proposed Class members because the proposed lead Plaintiffs' claims are based upon the same legal theories and laws. The Plaintiffs' grievances and damages, like the proposed Class member's grievances and damages, all arise out of the same relationship with, and course of conduct of, Defendants.

66.     The representative Plaintiffs can adequately represent the Classes. No conflict of interest exists between the representative and the Class members or with respect to the claims for relief requested.

67.     The representative Plaintiffs and heir chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. In addition, the representatives'

16

attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class members. Furthermore, the resources available to counsel ensure that the litigation will not be hampered by a lack of financial capacity. Plaintiffs' attorneys have sufficient financial resources and are willing to absorb the costs of the litigation.

68.     A class action is superior to any other available methods for adjudicating this controversy. The proposed class action is the surest way to fairly and expeditiously compensate so large a number of injured persons.

## FIRST COUNT:

### BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS J&M, F&P, AF, and KO and AGAINST TTS FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

69.     Plaintiffs repeat, reiterates and re-allege each and every allegation set forth in paragraphs 1 through 44 above.

70.     All attorneys, when retained by clients to handle legal matters and protect client's rights do so under a fiduciary duty imposed by law and the nature of the relationship of trust and confidence and the fact that a client has entrusted to the lawyer the task of protecting valuable rights of the client.

71.     Attorneys' duties to clients are deal fairly, honestly and with undivided loyalty; maintaining confidentiality; avoiding conflicts of interest; operating competently; safeguarding client property; handling client's interests over attorney.

72.     Defendants F&P, J&M and Finkelstein hold themselves out to the public as lawyers that provide affordable legal services to low income individuals. However, they include costs and expenses to client's bills that are improper and which reduce the recovery to their clients while enriching Defendants.

17

73.     In addition to the general fiduciary duties owed by attorneys to clients, there are specific additional fiduciaries that are enumerated in the Code of Professional Conduct and Client's Bill of Rights.

74.     J&M also states on its website that it recognizes a "Client's Bill of Rights." But, its arrangement with Total Solutions violates Rights 3, 4, and 9 of the "Client's Bill of Rights."

75.     Right 3 provides, "You are entitled to your lawyer's independent professional judgment and undivided loyalty uncompromised by conflicts of interest." The retainer agreement however admits that a conflict exists when one of the entities owned by the partner is retained.

76.     Right 4 provides, "You are entitled to be charged a reasonable fee and to have your lawyer explain at the outset how the fee will be computed and the manner and frequency of billing."

77.     Rule 9, provides "You are entitled to have your attorney conduct himself or herself ethically in accordance with the Rules of Professional Conduct."

78.     The New York Rules of Professional Conduct prohibit attorneys from "mak[ing] an agreement for, charge, or collect an excessive or illegal fee or expense." Rule 1.5(a).

79.     The New York Rules of Professional Conduct prohibit attorneys from "enter[ing] into an arrangement for, charge or collect fee[s] based on fraudulent billing." Rule 1.5(d)(3).

80.     The terms of the proposed transactions with TTS were not fair and reasonable to the Plaintiffs.

81.     The services to be provided and the charges for such services were not reasonably comprehensible to the Plaintiffs or any reasonably intelligent client.

82.     Defendants did not give Plaintiffs or other members of the class a reasonable opportunity to consult another lawyer about the transactions with TTS.

83.     Attorney's fiduciary duty also requires them to observe and honor the statutorily required Client's Bill of Rights and New York Rules of Professional Conduct.

84.     Retainer agreements must clearly state the essential terms of representation. The client should be fully informed of all relevant facts and the basis of the fee charges, especially in contingent fee arrangements.

85.     Defendants' acts and conduct constituted fiduciary breaches.

86.     Plaintiffs and the Class were damaged thereby.

87.     Remedies for attorneys' fiduciary breaches include disgorgement of any ill-gotten gain, compensatory damages and forfeiture of fees.

## SECOND COUNT:

### BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANTS J&M, F&P, AF AND KO

88.     Plaintiffs, repeat, reiterate, and re-allege each and every allegation set forth in paragraphs 1 through 63 above.

89.     Plaintiffs and Defendants F&P and Andrew Finkelstein and KO contracted for legal services based on a contingency fee arrangement. As described above, the actions taken by Defendants F&P and Finkelstein have violated the specific terms of Defendants' retainer agreement that it drafts and enters into with clients.

90.     F&P and AF and KO agreed to perform all legal services as enumerated in the retainer for a contingent fee.

19

91.     Upon information and belief, the charges from Total Trial billed to Ms. Harding and other clients in the Class were for services that constituted legal services which Finkelstein had contracted to provide to Harding as part of the retainer percentage.

92.     By failing to provide these services under the contingent fee agreement defendants breached their contract with Plaintiffs and other class members.

93.     Under New York law, where Defendants do business, good faith is an element of every contract including retainer agreements. All such contracts impose upon each contracting party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

94.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

95.     Defendants have breached the covenant of good faith and fair dealing in the retainer agreement that it employs with its clients through its billing practices as alleged herein.

96.     Plaintiffs and the Class have performed all, or substantially all, of the obligations imposed on them under the account agreement.

97.     Plaintiffs and the other members of the Class have sustained damages as a result of Defendants' breach of the retainer agreement and further breaches of the retainer agreement as modified by the covenant of good faith and fair dealing.

### THIRD COUNT:

### VIOLATION OF THE N.Y. GENERAL BUSINESS LAW § 349(a) AGAINST DEFENDANTS J&M, F&P, AF AND KO

98.     Plaintiffs, repeat, reiterate, and re-allege each and every allegation set forth in paragraphs 1 through 73 above.

99.     The elements of a cause of action under these statutes are that: (1) the challenged transaction was "consumer-oriented"; (2) Defendants engaged in deceptive or materially misleading acts or practices; and (3) Plaintiffs was injured by reason of Defendants' deceptive or misleading conduct.

100.     Retainer agreements must clearly state the essential terms of representation. The client should be fully informed of all relevant facts and the basis of the fee charges, especially in contingent fee arrangements.  While, in the law generally, equivocal contracts will be construed against the drafters, New York's Court of Appeals has directed that as a matter of public policy, courts  give particular scrutiny to fee arrangements between attorneys and clients, casting the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, and fully known and understood by their clients. *See Shaw v. Manufacturers Hanover Trust Co.*, 68 N.Y.2d 172, 176, 499 N.E.2d 864, 866 (1986).

101.     Defendants billing policies and practices are deceptive and materially misleading in the following respects, among others:

102.     The retainer agreement is a contract of adhesion in that it is a standardized form, imposed and drafted by Defendants, which is a party of vastly superior bargaining strength, and

21

only relegates to the client the opportunity to adhere to the terms or reject the agreement in its entirety.

103.     The retainer agreement provided to Plaintiffs and other class members is deceptive, unfair, and misleading in that it limits the Firm to incurring only "reasonable costs and expenses in performing legal services under the Agreement." While Defendants knew that their practice was to impose independent contractor charges on every client's fee.

104.     The retainer agreement is also is deceptive, unfair, and misleading in that it fails to provide the client with any meaningful choice in whether or not to utilize Total Trial, MedTrial or CineTrial. While the retainer states that client has "the right to inquire about the charges for these services [from Total Trial, MedTrial and CineTrial] and insist that any such services be obtained from other vendors to avoid any potential conflict of interest," the Firm fails to inform clients that is using any of these three entities before the client is billed for the service. As such, the Firm's promise is illusory.

105.     Upon information and belief, the retainer agreement is also  deceptive, unfair, and misleading in that it provides that the Firm "may" use independent contractors including Total Trial but fails to disclose that they always hires Total Trial, and other entities owned by partners of the Firm, to bill client's cases.

106.     Considering the great business acumen, legal knowledge, fiduciary obligation and experience of Defendants in relation to Plaintiffs and the members of the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the

22

allocation of the risks between the parties, and similar public policy concerns, these provisions are deceptive and therefore, unenforceable as a matter of law.

107.    The imposition of expenses to a non-attorney owned by Defendants Finkelstein and Oliver for alleged work that amounts to legal services and therefore encompassed by the contingency fee arrangement is itself unconscionable.

108.    As a result of the foregoing defendants are in violation of NY GBL 349 ad plaintiffs and class members have been injured thereby.

## FOURTH COUNT:

## UNJUST ENRICHMENT AGAINST DEFENDANTS TOTAL TRIAL SOLUTIONS AND ANDREW FINKELSTEIN AND KENNETH OLIVER (IN THE ALTERNATIVE)

109.    Plaintiffs, repeat, reiterate, and re-allege each and every allegation set forth in paragraphs 1 through 83 above.

110.    By the acts alleged herein, Defendants received a benefit from Plaintiffs and the proposed Class in the form of illegitimate, excessive fees or costs imposed on and collected from each Class member in the manner alleged herein.

111.    The retention of that benefit by Defendants would be unjust because the amounts were collected in a manner that violated New York law as outlined herein.

112.    By the facts alleged herein, equity demands that Defendants disgorge themselves of this benefit and that the benefit be returned to Plaintiffs and the Class.

## FIFTH COUNT:

## AGAINST ALL DEFENDANTS (EXCEPT TOTAL TRIAL SOLUTIONS LLC) UNDER NEW YORK JUDICIARY LAW 487

113.    Plaintiffs, repeat, reiterate, and re-allege each and every allegation set forth in paragraphs 1 through 87 above.

23

114.     All Defendants (except Total Trial Solutions LLC) as members of the bar of the State of New York and/or law partnerships engaged in the representation of clients in legal matters are subject to New York Judiciary Law 487.

115.     New York Judiciary Law 487 prohibits an attorney or firm which employs such attorney from engaging in any deceptive acts or practices on a client.

116.     New York Judiciary Law 487 allows a client who is a victim of deceptive acts or practices by an attorney or law firm to bring a civil suit for damages and include treble damages.

117.     Defendants have committed acts of deceit upon Plaintiffs and members of the class and thereby injured Plaintiffs and members of the class.

118.     Defendants' deceit was the proximate cause of Plaintiffs' injury and damage.

119.     Defendants are therefore liable to Plaintiffs and members of the class for damages and treble damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment to include as follows:

1.  Actual damages in the amount of the fees of independent contractors deducted from settlements and/or paid by Plaintiffs and other members of the class to any independent contractors in which any of the Defendants have any ownership or any pecuniary interest or from when any Defendants receives a financial benefit;

2.  Disgorgement of all ill-gotten gains derived by Defendants from their misconduct;

3.  Disgorgement of all fees to Defendants as a result of their fiduciary breaches and/or conflicted transactions;

4.  Actual damages in an amount according to proof;

24

5. Punitive and exemplary damages;

6. Damages under Judiciary Law 487 and treble damages as applicable;

7. Pre-judgment and Post-judgment interest at the maximum rate permitted by New York law;

8. Reimbursement for the costs and disbursements of Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to CPLR 909 and GBL 349;

9. Such other relief as this Court deems just and proper.

Dated: August 28, 2014

Respectfully submitted,

SQUITIERI & FEARON, LLP

By: _____
        Lee Squitieri
32 East 57th Street
12th Floor
New York, New York 10022
(212) 421-6492

LAW OFFICES OF JOSEPH SANTOLI
340 Devon Court
Ridgewood, New Jersey 07450
(201) 926-9200

Attorneys for Plaintiffs