<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NANCY HARDING and JEFFREY HARDING, on behalf of themselves and all others similarly situated, | Civil Action No. 14-5419 |
| *Plaintiffs*, | |
| v. | OPINION |
| JACOBY & MEYERS, LLP, et al., | |
| *Defendants*. | |

ARLEO, UNITED STATES DISTRICT JUDGE

### I.    INTRODUCTION

Presently before the Court is Defendants Jacoby & Meyers, LLP ("Jacoby & Meyers"), Finkelstein & Partners, LLP (the "Finkelstein firm"), Total Trial Solutions, LLC ("Total Trial"), Andrew Finkelstein, and Kenneth Oliver's (collectively "Defendants") motion to dismiss Plaintiffs Nancy Harding and Jeffrey Harding's (collectively "Plaintiffs") Complaint.  For the reasons set forth below, Defendants' motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

### II.    BACKGROUND

The Finkelstein firm is a law firm with offices in New York and New Jersey.  Jacoby & Meyers is also a law firm with offices in New York and New Jersey.  Both firms have the same principal place of business, share multiple office locations, and have substantially overlapping partnerships.  Compl. ¶¶ 4-5.  Oliver is a partner of both Jacoby & Meyers and the Finkelstein firm.  Id. ¶ 7.  Finkelstein is managing partner of both Jacoby & Meyers and the Finkelstein firm.

Id. ¶ 6. Total Trial purports to be a litigation support company and is owned, at least in part, by Finkelstein and Oliver. Id. ¶ 8.

Following a slip-and-fall accident, Nancy Harding retained the Finkelstein firm to represent her in a personal injury matter. Id. ¶ 12. On or about January 19, 2011, Nancy Harding entered into a retainer agreement with the Finkelstein firm. See Ex. A to Cecchi Cert, Dkt. No. 15-3.[1] The retainer agreement provided that the Finkelstein firm would receive a 33% contingency fee, costs and expenses would be deducted prior to the calculation of the contingency fee, and authorized the Finkelstein firm to "incur reasonable costs and expenses." Id. §§ 3(a), 3(b), 4(a). The agreement explicitly provided that the firm may utilize "very extensive trial support services" and expenses may include "private investigator fees" and "investigative fees." Id.

Aside from generally authorizing the Finkelstein firm's retention of independent contractors, the agreement explicitly addressed the Finkelstein firm's retention of three entities owned in whole or in part by Finkelstein and Oliver, including Total Trial. Id. § 4(c). The retainer agreements disclosed Finkelstein and Oliver's interest in Total Trial, provided that clients had "the right to inquire about the charges for these services and insist that any such services be obtained from other vendors to avoid any potential conflict of interest[,]" and represented that Total Trial "do[es] not provide legal services." Id. The retainer agreements also addressed the fact that services could possibly be obtained from another vendor at a lesser cost and that clients could consult with independent counsel about this issue:

> You should be aware that most of the services obtained from
> Total Trial, MedTrial and CineTrial can be obtained from other,

---

[1] The Court notes that copies of Plaintiffs' retainer agreements were attached to the Complaint, but these documents are barely legible. As such, the Court cites to the copies of these documents attached to the Certification of James Cecchi.

vendors. The cost for the services provided by these companies will vary when provided by other vendors; and, it is possible that the cost for a particular service, when offered by other vendors may be less expensive than those offered by Total Trial, MedTrial or CineTrial. However, the firm believes Total Trial, MedTrial and CineTrial provide superior services and you will benefit from the services provided by these companies notwithstanding this possible added expense. If at any time the Law Firm believes another vendor will provide comparable services for less it will notify you in order to give you the option of using the other vendor.

Please remember, you should consult independent counsel, if you deem appropriate, regarding the benefit and propriety of the above described expenses and the utilization of Total Trial, MedTrial and CineTrial.

Id.

Nancy Harding claims that while her personal injury case was pending, she was not informed that Total Trial was retained, that it was providing services, or of the basis for its charges. See Compl. ¶¶ 20-24. She also alleges that: (1) Defendants did not give her the opportunity to request that Defendants obtain price quotes from other vendors; (2) Defendants did not notify her that there were other vendors that would provide a comparable service for less than Total Trial charged; and (3) Defendants failed to adequately determine whether another vendor could provide comparable services for less than Total Trial charged. Id. ¶¶ 23-26.

After her case settled, Nancy Harding was presented with Total Trial's charges, which totaled $3,870.68. Id. at ¶ 31. Included in this amount were charges of $2,599.52 for "Review File/Drafting" and $1,019.37 for "File/Review/Editing." Id.

Plaintiff Jeffery Harding makes similar allegations. He also claims to have signed a retainer agreement that set forth the same contingency fee arrangement and that he was not properly informed about Total Trial's participation in his case. See id. ¶¶ 36-53. The amount

charged by Total Trial in Jeffrey Harding's personal injury case was $2,968.40, which included a charge of $2,681.00 for "File Review." Id. ¶ 54.

The gravamen of Plaintiffs' Complaint is that the amount charged by Total Trial was improper because Total Trial performed legal services that should have been provided by the Finkelstein firm. In other words, by deducting Total Trial's fee for providing legal services before charging the contingency fee, Defendants were able to recover more than the maximum 33.33% for performing legal services.

Plaintiffs bring the following causes of action: (1) breach of fiduciary duty or aiding breach of a fiduciary duty; (2) breach of contract and breach of the covenant of good faith and fair dealing; (3) violation of N.Y. Gen. Bus. L. § 349(a); (4) unjust enrichment; and (5) violation of New York Judiciary Law § 487.

The parties do not dispute that New York law applies.

## III.   STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Thus, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard: namely, "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The circumstances of the fraud must be stated with sufficient particularity to put a defendant on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

"[I]n ruling on a motion to dismiss, [a court] may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Pension Trust Fund For Operating Engs. v. Mort. Asset Securitization Transactions, Inc., 730 F.3d 263, 271 (3d Cir. 2013).

## IV.   ANALYSIS

### a.  Breach of Contract Claim

Defendants seek dismissal of plaintiffs' breach of contract claim against the Finkelstein firm, Jacoby & Meyers, Finkelstein, and Oliver

#### 1.  The Finkelstein Firm

The elements of a breach of contract claim are: (1) existence of a contract; (2) the plaintiff's performance; (3) defendant's breach; and (4) resulting damages. JP Morgan Chase v. J.H. Elec. of N.Y., Inc., 69 A.D.3d 802, 803 (N.Y. App. Div. 2010). Here, Plaintiffs have sufficiently pled all elements of this cause of action against the Finkelstein law firm. The complaint recites all elements – the contracts (the retainer agreements) how the Finkelstein firm

breached the agreements by retaining Total Trial to perform legal services which should have been performed by the law firm, and how plaintiff suffered damage as a result.

Defendants argue that the breach of contract claim nonetheless must be dismissed because the work provided by Total Trial was a "legitimate expense" under the retainer agreements.   In support, Defendants provide the Court with a biographical report for each Plaintiff that was prepared by Total Trial.   Ex. G. to Cecchi Cert., Dkt. No. 15-2.   Those biographical reports were not relied upon in the Complaint and therefore cannot be considered at this stage of the litigation.   Therefore, the Court cannot conclude as a matter of law that the retainer agreements were not breached.   That is a fact issue that cannot be resolved at this stage. Defendants' motion to dismiss this claim against the Finkelstein firm is denied.

### 2. Finkelstein and Oliver

The Court must next determine whether a breach of contract claim may be brought against Finkelstein and Oliver individually.

There is no dispute that neither Finkelstein not Oliver were parties to the retainer agreement.  To the extent that Plaintiffs argue that both Oliver and Finkelstein can be held liable for the partnerships' breach of the retainer agreements since they authorized and participated in the wrongful acts at issue, Plaintiffs fail to provide any authority to support of this argument.  In fact, in Consac Indus., Inc. v. LDZ Comercio Importacao, a case cited by Plaintiffs, the court stated, "Under New York law, 'to state a claim against a general partner for actions arising from the contractual obligations of the partnership, a complaint must allege that the partnership is insolvent or is otherwise unable to pay its debts.'"  2002 WL 31094855, at *3 (E.D.N.Y. Aug. 29, 2002) (quoting Baker v. Latham Sparrowbrush Assocs., 808 F. Supp. 992, 1003 (S.D.N.Y. 1992)); see also Lifeline Funding LLC v. Ripka, 114 A.D.3d 507, 507 (N.Y. App. Div. 2014);

FDIC v. Shea & Gould, 1997 WL 401822, at * 14 (S.D.N.Y. July 17, 1997). The Complaint contains no such allegations.

Plaintiffs also argue that Finkelstein can be held personally liable because he signed the retainer agreements on behalf of the partnership. Under New York law, the mere fact that Finkelstein is the Finkelstein firm's managing partner is insufficient to establish personal liability. See Mason Tenders Dist. Council Welfare Fund v. Van San Const. Corp., 2004 WL 1746714, at *4 (S.D.N.Y. Aug. 3, 2004) (dismissing breach of contract claim against president and sole shareholder of corporation because all other factors demonstrated he did not intend to be personally bound). Consistent with that principal, "an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement unless there is clear and explicit evidence of the agent's intention to substitute or add his personal liability for, or to, that of his principal." Consac Indus., Inc. v. LDZ Comercio Importacao, 2002 WL 31094855, at *3 (E.D.N.Y. Aug. 29, 2002) (quotation and citation omitted). In determining whether an individual will be held personally liable when executing a contract on behalf of an entity, they consider a variety of factors including "the structure and content of the signature lines" and "the length of the contract, the location of the liability provision(s) in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation." Id

Here, the Court concludes that several factual issues, such as the nature of the negotiations leading up to the retainer agreements' execution, preclude dismissal of this cause of action against Finkelstein at this early stage. Defendants may renew their request for dismissal following the close of discovery. Consac, 2002 WL 3094855, at *3; see also TR 39th Street Land Corp. v. Salsa Distrib. USA, LLC, No. 11-7193, 2013 WL 3090441, at *9 (S.D.N.Y. June

18, 2013) (denying motion to dismiss breach of contract claim against individual signatory prior to discovery). The breach of contract claim may proceed against Finkelstein.

It is undisputed that Oliver was not a signatory to the contract. The claim against him will therefore be dismissed.

### 3.   Jacoby & Meyers

As noted above, both retainer agreements are between the Finkelstein firm and Plaintiffs. Plaintiffs offer three theories as to how Jacoby & Meyers can nonetheless be held liable. The Court is not persuaded.

First, Plaintiffs argue that because the Finkelstein firm retained Total Trial under the circumstances alleged by Plaintiffs, Jacoby & Meyers must have done the same thing. This allegation, however, is clearly premised upon mere speculation; such speculation is insufficient to survive a motion to dismiss. See Zavala v. Wal Mart Stores, Inc., 691 F.3d 527, 542 (3d Cir. 2012) ("Even on a motion to dismiss, we are not required to credit mere speculation."); see also Iqbal, 556 U.S. at 678.

Second, Plaintiffs argue that Jacoby & Meyers can be held liable for the actions of its partners, Finkelstein and Oliver. New York Partnership Law § 24 provides that a partnership may be held liable for actions taken by its partners acting "in the ordinary course of the business of the partnership." Here, to the extent Finkelstein and Oliver breached any duty to Plaintiffs, such breaches occurred during the ordinary course of the Finkelstein firm's business. Therefore, Jacoby & Meyers cannot be held liable under this theory. Dupree v. Voorhees, 68 A.D.3d 807, 809 (N.Y. App. Div. 2009); In re Wedtech Corp., 88 B.R. 619, 623 (Bankr. S.D.N.Y. 1988).

Finally, Plaintiffs argue that Jacoby & Meyers can be held liable under some form of veil piercing or alter-ego liability. The Court finds that the Complaint is devoid of any factual

allegations that could support such a finding.  For example, there are no allegations of misuse of the corporate form for a nefarious purpose, complete dominion, undercapitalization, shuffling of assets or debts, or abuse of power.  See Island Seafood Co. v. Golub, 303 A.D.2d 892, 893-94 (N.Y. App. Div. 2003) (refusing to unwind corporate form even though two corporations were owned and operated by the same individual and individual may have used corporate funds for own purposes); Morris v. New York State Dep't of Tax. & Fin., 82 N.Y.2d 135, 142 (1993) ("The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene."); Xiotech Corp. v. Express Data Prods. Corp., 11 F. Supp. 3d 225, 237 (E.D.N.Y. 2014) ("Allegations of shared common ownership and senior management responsibility do not reach the requisite threshold.").

Therefore, Defendants' motion to dismiss Jacoby & Meyers is granted without prejudice.[2]

### b.  Breach of Covenant of Good Faith and Fair Dealing

Defendants seek to dismiss Plaintiffs' claim of breach of the covenant of good faith and fair dealings.  This court is satisfied that Plaintiffs' allegations that Defendants violated the covenant of good faith and fair dealing  as a corollary to its  breach of contract cause of action, is appropriate under New York law.  See Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001).

Under New York law, "an obligation of good faith and fair dealing on the part of a party to a contract may be implied and, if implied, will be enforced."  Murphy v. Am. Home Prods.

---

[2] Defendants also seek to bring breach of fiduciary duty, breach of N.Y. Gen. Bus. Law § 349(a), and breach of N.Y. Judiciary Law § 487 claims against Jacoby & Meyers.  The Court concludes that Plaintiffs have also failed to plead any basis for maintaining these claims against Jacoby & Meyers and these claims are also dismissed.

Corp., 58 N.Y.2d 293, 305 (1983). This covenant may not nullify existing terms and may not create obligations beyond those expressly stated in the contract. RBFC One, LLC v. Zeeks, Inc., 367 F. Supp. 2d 604, 625 (S.D.N.Y. 2005). Instead, the covenant is breached when a party violates "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." Id.; see Michaan v. Gazebo Horticultural, Inc., 117 A.D.3d 692, 692-93 (N.Y. App. Div. 2014) (recognizing the covenant is breached "where one party to a contract seeks to prevent its performance by, or to withhold its benefits from, the other").

At this early stage of the litigation, the Court cannot determine whether that the allegations supporting this theory are truly duplicative of their breach of contract allegations or contradicted by the retainer agreements' express terms. See Compl. ¶¶ 93-95. As such, Defendants' motion to dismiss the breach of contract claim premised upon the breach of the covenant of good faith and fair dealing as to the Finkelstein firm and Finkelstein is denied.

### c. Unjust Enrichment

Plaintiffs have brought an unjust enrichment claim against Finkelstein, Oliver, and Total Trial. The elements of an unjust enrichment claim are: (1) a defendant was enriched; (2) at plaintiff's expense; (3) under such circumstances that equity and good conscience demand defendant not retain what is sought to be recovered. Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012).

First, Defendants argue that Plaintiffs' unjust enrichment claim must be dismissed because the retainer agreements govern the parties' dispute. The Court disagrees. The mere existence of a written valid contract does not prohibit a party from also pursuing an unjust enrichment claim. Spirt Locker, Inc. v. EVO Direct, LLC, 696 F. Supp. 2d 296, 305 (E.D.N.Y.

2010). Instead, an unjust enrichment claim may be pled in the alternative when the contract is invalid or does not govern the conduct alleged. See Chowaiki & Co. Fine Art Ltd. v. Lachner, 115 A.D.3d 600, 601 (N.Y. App. Div. 2014); see Wilmoth v. Sandor, 259 A.D.2d 252, 254 (N.Y. App. Div. 1999). Here, the Court cannot conclude at this early stage that Plaintiffs' unjust enrichment claim must be dismissed as duplicative or simply because of the retainer agreements' existence.

The Court concludes, however, that Plaintiffs have failed to plead an unjust enrichment claim against Oliver or Finkelstein. Plaintiffs allege that all of the improper payments were made to Total Trial, not to Finkelstein or Oliver. Id. ¶¶ 31, 54. Plaintiffs have failed to properly plead an unjust enrichment claim against Oliver and Finkelstein because Plaintiffs have failed to offer any basis for holding these individuals personally liable for Total Trial's receipt of the funds at issue. Therefore, the unjust enrichment claim will only be dismissed as against Oliver and Finkelstein.

### d. Breach of Fiduciary Duty Claim

To state a breach of fiduciary duty claim, a plaintiff must allege: (1) the existence of a fiduciary duty; (2) misconduct by a defendant; and (3) resulting damages. See Cavaliere v. Plaza Apts., Inc., 84 A.D.3d 712, 713 (N.Y. App. Div. 2011). Plaintiffs bring a breach of fiduciary duty claim against the Finkelstein firm, Finkelstein, and Oliver. Additionally, Plaintiffs seek to bring an aiding and abetting breach of fiduciary duty claim against Total Trial.

Defendants offer several factual challenges to Plaintiffs' claim that Defendants breached their fiduciary duties. As set forth above, the Court may not consider such disputes as part of a motion to dismiss under Rule 12(b)(6). Therefore, Defendants' motion to dismiss on this basis is denied.

Defendants also argue that this cause of action must be dismissed as it is duplicative of the breach of contract claim.   Under New York law, a breach of fiduciary duty claim is duplicative, and must therefore be dismissed, when it is "premised upon the same facts and seek[s] identical damages."   Chowaiki & Co. Fine Art Ltd. v. Lacher, 115 A.D.3d 600, 600-01 (N.Y. App. Div. 2014).   Here, the Court cannot conclude at this early stage that the breach of fiduciary duty claim is wholly duplicative of the breach of contract claim because these causes of action are brought against different defendants and may ultimately implicate factual issues not encapsulated by the retainer agreements.

### e.   Violation of N.Y. General Business Law § 349(a)

To state a violation of N.Y. Gen. Bus. L. § 349(a), a plaintiff must plead: (1) defendant's acts or practices were directed at consumers; (2) these acts or practices were misleading in a material way; and (3) the plaintiff was damaged as a result.   Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007).

Plaintiffs bring this cause of action against the Finkelstein firm, Finkelstein, and Oliver.

First, Defendants argue that this claim fails because their alleged practices were not directed at consumers.   The Court disagrees.   The Second Circuit explained in Wilson v. Northwestern Mut. Ins. Co., that "the 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue potentially affect[s] similarly situated consumers." 625 F.3d 54, 64 (2d Cir. 2010) (internal quotation and citation omitted).   Here, Plaintiffs allege the retainers are standard form agreements that the Finkelstein firm uses with all of their clients. Compl. ¶ 63.   Thus, this element is sufficiently pled.   See Sterling v. Ackerman, 244 A.D.2d 170 (N.Y. App. Div. 1997).

Defendants also argue that Plaintiffs have not pled the second element: materially misleading acts or practices. In analyzing this element, the Court must objectively analyze whether Plaintiffs allege "deceptive acts or practices likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Midland Bank, 85 N.Y.2d 20, 26 (1995). While Defendants argue that Plaintiffs should be charged with knowledge of the retainer agreements' contents, this argument misses the mark. The retainer agreements provide that Total Trial does not provide legal services. Plaintiffs' claims are premised upon the falsity of this representation. As was true of Plaintiffs' other causes of action, the disputed issue of whether Total Trial provided legal services precludes dismissal of this claim. See Weil v. Long Island, 77 F. Supp. 2d 313, 319, 324-25 (E.D.N.Y. 1999).

### f. Violation of New York Judiciary Law § 487

Defendants seek dismissal of plaintiffs' claims under the New York Judiciary Law. That statute provides:

> An attorney or counselor who:
>
> 1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
>
> 2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,
>
> Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

A civil claim under this statute may only be brought when the wrongful conduct occurs in a pending suit. For example, when at the conclusion of a case, an attorney submits false time

13

records for the purpose of overbilling the client, a claim cannot be brought under this statute. Henry v. Brenner, 271 A.D.2d 647, 648 (N.Y. App. Div. 2000); see also Mahler v. Campagna, 60 A.D.3d 1009, 1012-13 (N.Y. App. Div. 2009) (dismissing claim for alleged overpayment to attorney because no action was pending).

Here, the alleged misconduct occurred after the matter ended. Thus, this cause of action is dismissed in its entirety.

## V.   CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART.** An appropriate order shall issue.


Dated: March 3, 2015                                      /s Madeline Cox Arleo
                                                          **Hon. Madeline Cox Arleo**
                                                          **UNITED STATES DISTRICT JUDGE**