Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NANCY HARDING et al,

    *Plaintiffs*,

v.

JACOBY & MEYERS, LLP, et al,

    *Defendants*.

Civil Action No. 14-5419 (JMV) (MF)

**OPINON**

**John Michael Vazquez, U.S.D.J.**

This class action comes before the Court on Plaintiffs' motion for class certification. The matter arises from a dispute between Nancy and Jeffrey Harding and their former lawyers, Finkelstein & Partners, LLP ("F&P"). Plaintiffs allege that they were improperly charged for work performed by Total Trial Solutions, LLC ("Total Trial"), a litigation support company that is owned by one of the named partners of Finkelstein & Partners. Plaintiffs filed this matter on behalf of themselves and all others similarly situated. Plaintiffs claim that Total Trial's work should have actually been covered by F&P's contingency fee arrangement with Plaintiff; instead, Plaintiffs were charged for Total Trial's work as a separate expense. Plaintiffs also seek the appointment of class counsel. For the reasons stated below, Plaintiff's motion is **DENIED**.

**I. Background & Procedural History**

Plaintiffs Nancy and Jeffrey Harding filed their Complaint on August 28, 2014, against Jacoby & Meyers, LLP, F&P, Total Trial, Andrew Finkelstein, and Kenneth Oliver. D.E. 1 ("Compl."). Plaintiffs had retained F&P to separately represent them in two unrelated personal injury lawsuits. Compl. at ¶¶12, 36. Ms. Harding's case ultimately settled for $195,000; F&P's

1

one-third contingency fee was $57,938.60, and $21,183.66 was deducted from the settlement for litigation expenses. Compl. at ¶29. Mr. Harding's case was settled for $99,280.00. Compl. at 52. The contingency fee was $29,340.06, and his settlement was reduced by another $11,258.50 for expenses. *Id.* Part of the deducted expenses in Ms. Harding's case, $3,870.68, and in Mr. Harding's case, $2,968.40,[1] were for payments made to Total Trial. Compl. at ¶8, 53-54, Exhibit B to the Declaration of Olimpio Lee Squitieri in Support of Plaintiff's Motion for Class Certification (hereinafter "Squitieri Decl.") at 7.

Both Finkelstein and Oliver are equity partners of F&P. Ex. B to Squitieri Decl. at 7-8. Total Trial, along with MedTrial Solutions, LLC, and CineTrial Solutions, LLC, were formed in 2009 by Defendants Andrew Finkelstein and Kenneth Oliver as litigation support businesses.[2] Ex. D to Squitieri Decl. While all three LLCs are litigation support service businesses, Total Trial is the focus here. Oliver has since divested his interest in Total Trial. *See* Ex. B to Squitieri Decl. at 7-8.

Total Trial performs a number of different services for F&P and Jacoby & Meyers, including: service of subpoenas, writing and editing client biographies, investigations, photo and video gathering, locating expert witnesses, research, conducting focus groups, and creating trial exhibits. *See* Ex. I to Squitieri Decl. Total Trial shares space in the same building as F&P, and

---

[1] Mr. Harding's Declaration cites this number but no receipt for the "future special needs" report is included in Exhibit. Without it, the total deductions for Total Trial expenses equal $2,728.98. *See* Ex. T to Squitieri Decl.

[2] Joel Finkelstein also owned part of Total Trial, MedTrial, and CineTrial when they were formed. *See* Ex. D to Squitieri Decl. at 42. Finkelstein was an equity partner in Jacoby and Meyers at the time. The three entities – Total Trial, MedTrial, and CineTrial – had formerly been incorporated before being changed to LLCs. Ex. D to Squitieri Decl.

F&P also shares the same computer system with Total Trial.[3]  Ex. F to Squitieri Decl. at 16-17.

Total Trial performed several tasks on Ms. Harding's case including the following: preparing a biography, scanning and printing color photographs, preparing a video, and locating a liability expert. Declaration of Nancy Harding at ¶6. For Mr. Harding's case, Total Trial prepared a biography as well as printed and copied color photographs. Declaration of Jeffrey Harding at ¶6.

Both Mr. and Ms. Harding signed retainer agreements with F&P that included the following language under the heading "Litigation Costs and Expenses":

> (b) *Costs and Expenses Affecting Contingency Fee*
> Costs and expenses paid by Law Firm in connection with Client's claim shall be reimbursed before the contingency fee is computed .
> . . .
>
> (d) *Advancement of Costs*
> "Law Firm is authorized to incur reasonable costs and expenses in performing legal services under this Agreement." In accordance with applicable law, regardless of the outcome of this matter, Client shall remain responsible to the Law Firm for such advances. The Law Firm utilizes very extensive trial support services in order to obtain the best possible verdict or settlement, which can result in large expenditures by the Law Firm . . . .
>
> (c) *Total Trial Solutions, LLC, MedTrial Solutions, LLC, and CineTrial Solutions, LLC.*
> Among the independent contractors we use is Total Trial Solutions, LLC, ("Total Trial"), MedTrial Solutions, LLC ("MedTrial") and CineTrial Solutions, LLC ("CineTrial"). Total Trial provides a very broad menu of litigation support services. These include, but are not limited to: story and biographical work by accomplished writers, computerized time lines and trial exhibit creation, forensic accounting, forensic data base searches, investigation including scene inspection and witness statements, transportation, translator/interpreter services, in Court technical support time coding documents for trial/mediation/arbitration . . . .

---

[3] As to sharing the same computer system, Defendants do not challenge the assertion, so the Court accepts it as true for purposes of the motion.

> Total Trial, MedTrial and CineTrial are owned in whole or in part by Andrew Finkelstein and Kenneth Oliver, Partners of the Law Firm. Mr. Finkelstein and Mr. Oliver will benefit from the use of these services by the Law Firm. Consequently, you have the right to inquire about the charges for these services and insist that any such services be obtained from other vendors to avoid any potential conflict of interest. Be aware, these companies are not a law firm, are not part of the Law Firm and do not provide legal services. However, we have found the use of these companies allows for a seamless offering of services necessary for exemplary trial work.
>
> You should be aware that most of the services obtained from Total Trial, MedTrial and CineTrial can be obtained from other vendors. The cost for the services provided by these companies will vary when provided by other vendors; it is possible that the cost for a particular services, when offered by other vendors may be less expensive than those offered by Total Trial, MedTrial or CineTrial. However, the firm believes Total Trial, MedTrial and CineTrial provide superior services and you will benefit from the services provided by these companies notwithstanding this possible added expense. If at any time the Law Firm believes another vendor will provide comparable service for les it will notify you in order to give you the option of using another vendor.
>
> Please remember, you should consult independent counsel, if you deem appropriate, regarding the benefit and propriety of the above described expenses and the utilization of Total Trial, MedTrial and CineTrial.

Exs. K & L to Squitieri Declaration. The parties do not dispute that the same, or a substantially similar, retainer was used by F&P during the relevant period.

As noted, Plaintiffs filed their Complaint in August 2014 on behalf of themselves and others similarly situated. D.E. 1. The Complaint accuses Defendants of: breach of fiduciary duty (against F&P, Jacoby & Meyers, Finkelstein and Oliver), aiding and abetting breach of fiduciary duty (against Total Trial), breach of the duty of good faith and fair dealing (against F&P, Jacoby & Meyers, Finkelstein and Oliver), violation of N.Y. General Business Law §349(a) (same), unjust enrichment (against Total Trial, Finkelstein and Oliver), and violation of N.Y. Judiciary Law §487 (against F&P, Jacoby & Meyers, Finkelstein and Oliver). Compl. at

¶69-119.

Defendants filed a motion to dismiss on October 23, 2014. D.E. 15. Judge Arleo granted and denied the motion in part, dismissing the claim for breach of contract against Oliver and Jacoby & Meyers, the unjust enrichment claim against Finkelstein and Oliver, and the claim for violation of New York Judiciary Law §487. D.E. 28. Judge Arleo denied the motion as to the following counts: breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing, violation of N.Y. General Business Law §349(a), and unjust enrichment. *Id.*

Discovery and settlement discussions were ongoing throughout 2015 and 2016. D.E. 29-72. Plaintiffs filed a motion to consolidate their case with a parallel case, *Smalls v. Jacoby & Meyers, et al*, Docket No. 15-6559, on March 9, 2016. D.E. 73. Judge Falk denied the motion and directed Plaintiffs to file their motion for class certification on July 25, 2016. Plaintiffs filed the instant motion on August 31, 2016.

Plaintiffs request that the following class be certified: "Clients of Finkelstein & Partners who were billed for litigation support services provided by Total Trial from March 31, 2009 until the present." D.E. 80, 81, Brief in Support of Motion for Class Certification at 11 (hereinafter "Certification Brief"). Defendants filed their Opposition on September 26, 2016, D.E. 85, to which Plaintiffs replied, D.E. 88. Defendants filed a letter on October 5, 2016, objecting to Plaintiff having allegedly raised new arguments and including a new class definition in their Opposition on October 5, 2016. D.E. 94.[4] Plaintiffs replied to the letter the next day. D.E. 95.

---

[4] Defendants object that Plaintiffs, in their reply, propose a potentially new class definition: "Clients of Finkelstein & Partners who were improperly billed by Total Trial for legal services, law firm overhead, or otherwise charged an impermissible markup." *See* Reply Memorandum of Law in Further Support of Plaintiff's Motion for Class Certification (hereinafter "Reply Brief") at 5 & n.2. They further object that Plaintiffs advanced a new argument in their reply, namely

5

## II. Standard

Plaintiff bears the burden of showing that the proposed class satisfies the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure:

1. The class is so numerous that joinder of all members is impracticable;
2. There are questions of law or fact common to the class;
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4. The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). These four prongs are often referred to as numerosity, commonality, typicality, and adequacy of representation.

Additionally, Plaintiffs must show that at least one of the three requirements of Rule 23(b) is satisfied. *See* Fed. R. Civ. P. 23(b). Plaintiffs here seek certification under 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Rule 23(b)(3)'s requirements are often referred to as the predominance prong and the superiority prong.

"Careful application of Rule 23 accords with the pivotal status of class certification in large-scale litigation." *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 310 (3d Cir. 2008). Rule 23 is not a "mere pleading standard"; Plaintiffs must show that the putative class meets the requirements through *evidentiary proof. Id.* at 316; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). In other words, conformity with Rule 23 is not presumed and a plaintiff must support its position with evidence. "[A] party's assurance to the court that it

---

that "Finkelstein & Partners failed to have a process in place to adequately inform clients of Total Trial Solutions' services and their costs." D.E. 94. As discussed below, the Court finds that Plaintiffs' motion is lacking and the proposed changes by Plaintiff would not cure the deficiencies noted.

6

intends or plans to meet the requirements is insufficient." *In re Blood Reagents Antitrust Litigation*, 783 F.3d 183, 187 (3d Cir. 2015) (citations omitted).

At the certification stage, a court should not evaluate the merits of either party's legal or factual claims. Nevertheless, it may be necessary "to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." *In Re Ford Motor Co. Ignition Switch Products Liability Litigation*, 174 F.R.D. 332, 339 (D.N.J. 1997). In other words, a court does not review legal and factual claims to determine who will prevail, but a court can consider such claims in deciding whether Rule 23's prerequisites are established. Analysis of a motion for class certification is "rigorous," and requires the Court to make the finding that each requirement of Rule 23 is met. *In re Mercedes-Benz Tele Aid Contract Litigation,* 257 F.R.D. 46, 55 (D.N.J. 2009). Using a preponderance of the evidence standard, the Court must find that each requirement has been met after thoroughly reviewing relevant evidence, "including expert testimony." *Id.*

### III. Analysis

As an initial matter, Defendants only challenge Plaintiff's arguments for class certification as to typicality, commonality, predominance, and damages.[5] Thus, the Court will only address those four areas. Defendant's argument, at base, is that Plaintiff has failed to present sufficient evidence, expert or otherwise, that would allow the Court to find by a preponderance of the evidence that the foregoing Rule 23 requirements have been met.

As noted, Plaintiffs cannot simply "propose a method" for showing the Rule 23 requirements "without evidentiary support." *Harnish v. Widener University School of Law*, 833

---

[5] In their moving papers, Plaintiff addressed all the requirements of Rule 23(a) and (b)(3).

7

F.3d 298, 304 (2016) (citation omitted) (upholding a district court's denial of class certification on the grounds that predominance had not been adequately shown). The Third Circuit explained that while class certification does not require full analysis of the merits, the district court has to predict "how specific issues will play out." *Id.* "Thus, the task for the District Court [is] to determine whether the plaintiffs' proposed class-wide theories *and evidence* would be sufficient." *Id.* at 305 (emphasis in original); *see also In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d at 318 (stating that "assurance to the court that [a party] intends or plans to meet the requirements is insufficient"). Yet, Plaintiffs need not "go so far as to . . . prove that the class will succeed on its claims." *Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190, 196 (3d Cir. 2013).

Plaintiff's motion suffers from a fundamental defect: the lack of critical evidence to support their legal theory. Plaintiffs have failed to proffer any evidence (which presumably would come in the form of an expert) as to the three central issues presented: (i) whether Total Trial was performing legal work that should have been done by F&P; (ii) whether F&P should have handled certain Total Trial tasks internally and without additional charge to Plaintiffs; and (iii) whether Total Trial's rates were unreasonably high. At best, Plaintiffs only state that they intend to call an expert on these issues.

For example, Plaintiffs complain that certain activities by Total Trial – such as the writing of client biographies[6] and the printing/scanning/saving of colored photographs – are duties that any reasonable personal injury law firm should undertake in the normal course of

---

[6] Defendant also notes that a relatively small percentage of F&P's clients were charged for Total Trial's biography services. If true, this fact could significantly impact the size of the proposed class and the anticipated damages.

8

representation. In other words, these tasks should not be farmed out and Plaintiffs should certainly not be charged for the expense of doing so. Plaintiffs, however, need evidence to support this position. Unfortunately, Plaintiffs as lay persons are not in position to opine as to what work a personal injury law firm normally does itself. Similarly, as to alleged inflated prices for other services offered by Total Trial, Plaintiffs completely fail to offer evidence as to which services, the normal and customary costs for such services, and the amount that Total Trial overcharged.

Rather than present expert testimony on what, by Total Trial, constitutes the practice of law, or what kinds of services are typically performed in-house at a personal injury law firm such as F&P, Plaintiffs instead state that "expert testimony *can* be used to support Plaintiff's theory of liability and damages. For instance, an expert specializing in attorney ethics, legal malpractice, and professional liability *could* review Total Trial's work product and opine as to whether Defendants" either should have performed the work themselves or overcharged Plaintiffs for it. Certification Brief at 20 (emphasis added).[7]

### 1. Typicality

The typicality requirement measures whether the interests of the lead plaintiff "align with the interests of the absent members," and whether the circumstances of the purported class are the same. *See Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Even if there are factual

---

[7] Total Trial uses 160 different codes when billing, each of which correspond to 110 different tasks. *See* Ex. I to Squitieri Decl. Defendants point to this vast array of codes and tasks as proof that class certification will not be possible. The Court does not necessarily agree; whether certain codes or tasks can effectively be grouped together for purposes of class certification will be fact dependent. Of course, if Plaintiffs again move for class certification, they should provide a more thorough explanation as to why the differing codes and tasks are either irrelevant or can amalgamated in fashioning the class.

9

differences among the class, typicality can still be satisfied. *Id.*; *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (stating that typicality, like commonality, is a "low threshold").

Plaintiffs argue that because all class claims are based on the same legal theory and "stem from" a "common course of misconduct" by Defendants, the typicality prong is satisfied. Certification Brief at 15-16. Defendants argue that the two Plaintiffs here are not typical of the class because "they have not set forth any overarching factual or legal theory as to why *any* billing, let alone *all* billing for [Total Trial's] services was improper."[8] Opposition Brief at 9 (emphasis in original).

The Court recognizes that typicality requirement is not a high burden, but Plaintiffs nevertheless fall short. Plaintiffs do point to a common practice or course of conduct by F&P vis-à-vis the proposed class: the use of the substantially same retainer as well as the hiring of Total Trial. Yet, Plaintiffs apparently claim that *all* of Total Trial services were either the improper practice of law, should not have been billed as separate expenses, and/or were overpriced. At least, this is apparently Plaintiffs' position in light of the class they seek to certify (although Plaintiffs by no means allege deficiencies as to all services). However, due to the evidentiary void noted above, Plaintiffs have not met their burden. Plaintiffs have not

---

[8] Defendants also argue that Plaintiffs could not present expert testimony on the question of what constitutes the practice of law as "it is a question of law, not expert opinion." Defendant's Brief in Opposition to Plaintiff's Motion for Class Certification (hereinafter "Opposition Brief") at 10 & n.6. If true, then Defendants claim that an expert is necessary is erroneous. Nevertheless, the thrust of Plaintiffs' claims do not appear to focus on Total Trial's provision of legal services. Instead, Plaintiffs seemingly claim that many of services provided by Total Trial should have instead been performed by F&P so that Plaintiffs' would not have paid for them as additional expenses. Nevertheless, because the Court is denying the motion without prejudice, if Plaintiffs renew their motion in the future, they must specifically designate what Total Trial work they are alleging to be legal services.

demonstrated that their claims are typical of all other clients of F&P, in whose cases Total Trial was used, during the requested period. Plaintiffs have not provided sufficient evidence of which Total Trial services in their own cases were actually legal services, should have been performed in-house by F&P, and/or were overpriced. Plaintiffs, as lay persons, cannot opine as to what constitutes legal services or services that F&P should have performed itself. Similarly, because Plaintiffs do not indicate that they are personally familiar with the relevant industry (such as subpoena service), they cannot opine as to which services were overpriced. Without understanding this critical threshold information, the Court cannot conclude that Plaintiffs' claims are typical of all other clients of F&P and Total Trial during the period. If Plaintiffs do submit such evidence in the future, the Court will be in a better position to assess the typicality prong.

*2. Commonality*

Typicality and commonality are both broad categories that "tend to merge because they focus on similar aspects of the alleged claims." *Newton*, 259 F.3d at 187. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores*, 564 U.S. at 349-50 (citation omitted). The class claims must rely on a "common contention" that is capable of being resolved by the class action. *Id.* at 338. The issue is not whether the class claims ask the same question, but whether the class action "will generate common answers apt to drive the resolution of the litigation." *Id.* at 350. The claims need not be identical, and they may have factual differences. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1994). However, the lead plaintiffs must share at least one question of fact or law with the prospective class. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013).

11

Plaintiff's main argument as to commonality of legal issues is that all putative class members signed the same or similar retainer. Certification Brief at 15. Defendants counter that the retainer agreement is not enough, because Plaintiffs would need an expert to testify as to which services rendered by Total Trial—if any—were either legal services, services that the firms should have performed in-house, or services that the class members were overcharged for. Opposition Brief at 13-14. Defendant argues that what will result are "hundreds of individualized trials" instead of a full adjudication of the entire class-wide questions. *Id.* at 14.

The commonality prong is lacking for the same reasons as the typicality requirement. The Court is well aware of the commonality concerning the retainer agreements and the use of Total Trial, but the Court is unable to form the common question (much less answer) as to which specific Total Trial services are at issue. Again, if Plaintiffs submit the appropriate evidence in the future, they may be able overcome this relatively low hurdle. For example, Plaintiffs may be able to produce evidence that any F&P client who was charged for A, B, and C services by Total Trial were improperly charged because F&P should have performed those services in-house. Similarly, Plaintiffs may be able to produce evidence that any F&P client who was charged for X, Y, and Z services by Total Trial were overcharged.[9] Yet, to date, Plaintiffs have not sufficiently done so even as to their own claims.

### 3. Predominance

The Rule 23(b)(3) predominance requirement is more stringent than the commonality requirement of 23(a). *See In re Hydrogen*, 552 F.3d at 311. However, they are often discussed together. Predominance "tests whether the proposed class[] [is] sufficiently cohesive to warrant

---

[9] The Court is aware that if such evidence is forthcoming, sub-classes may be necessary. However, the Court will first determine if such evidence is produced in the first instance.

adjudication by representation." *In re Mercedes-Benz*, 257 F.R.D. at 72 (citations omitted). A court must necessarily "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d at 311. Here, as they have fallen short on commonality, Plaintiffs have not met their burden as to predominance. *See, e.g., Marcus v. BMW of North America, LLC*, 687 F.3d 583, 600-01 (3d Cir. 2012) (reversing the district court's grant of class certification for failure to show predominance, despite all of plaintiff's common law claims having the same theoretical basis).

  *4. Damages*

Even though damages calculations are pertinent to the merits of a class action, the Court may also consider, at the class certification stage, how Plaintiff intends to show alleged damages suffered by the class. *See Comcast*, 569 U.S. at 34. It is "clear that a plaintiff seeking class certification must present evidence of a reliable methodology for calculating damages on a class-wide basis." *Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190, 202 (3d Cir. 2013).

At this point, it is not clear how Plaintiffs propose to prove damages because, as noted, it is not clear which Total Trial services are at issue. Plaintiffs only state that their damages would be "simply . . . a refund of unlawfully charged Total Trial fees." Reply at 11. Such an assertion begs the essential question of which fees were unlawfully charged. If and when Plaintiffs provide sufficient evidence as to the suspect charges, then their damage theory may be viable.

## IV.   Conclusion

For the reasons stated above, and for good cause shown, Plaintiff's motion for class certification is **DENIED** without prejudice. Because the Court is denying the motion, Plaintiff's motion to appoint counsel is also **DENIED** without prejudice. An appropriate Order

13

accompanies this Opinion.

Dated: October 30, 2017

                                                              John Michael Vazquez, U.S.D.J.