UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NANCY HARDING & JEFF HARDING, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>JACOBY & MEYERS, LLP, et al.,<br><br>*Defendants.* | Civil Action No. 14-5419 |
| BARBARA J. SMALLS, on behalf of herself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>JACOBY & MEYERS, LLP, et al.,<br><br>*Defendants.* | Civil Action No. 15-6559<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This putative class action comes before the Court on Defendants' motion for summary judgment, D.E. 146, and motion to strike Plaintiffs' expert, D.E. 157. Plaintiffs' oppose both motions, D.E. 153, 159. Defendants filed briefs in reply for both motions.[1] D.E. 156, 160. The

---

[1] Defendants' brief in support of their motion for summary judgment, D.E. 146-1, will be referred to as "Def. Br.", Plaintiffs' brief in opposition to the motion, D.E. 153, will be referred to as "Plf. Opp.", and Defendants' reply brief, D.E. 156, will be referred to as "Def. Reply." In addition, Defendants' Statement of Uncontested Material Facts, D.E. 133-1, will be referred to as "Def.

Court reviewed all submissions made in support of the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**, and their motion to strike is **DENIED without prejudice**.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter arises from a dispute between Nancy and Jeffrey Harding (the "Harding Plaintiffs") and their former lawyers, Finkelstein & Partners, LLP ("F&P"), and a dispute between Barbara J. Smalls and her former lawyers, Jacoby & Myers, LLP ("J&M").[2] The Hardings and Smalls retained F&P and J&M, respectively, to represent them in their personal injury cases for a contingency fee. Plaintiffs allege that the Law Firm Defendants improperly charged them for work performed by Total Trial Solutions, LLC ("Total Trial"). Total Trial is a litigation support company that is partially owned by Andrew Finkelstein, the managing partner of F&P and J&M.[3] Plaintiffs claim that Total Trial's work should have been included in the Law Firm Defendants' contingency fee rather than billed as separate non-legal expenses. Plaintiffs also allege that the Law Firm Defendants improperly marked-up the cost of Total Trial's work in order to make a profit.

---

SOMF"; Plaintiffs' Responsive Statement of Material Facts, D.E. 139-1, will be referred to as "Plf. SOMF"; Plaintiffs' Supplemental Statement of Disputed Material Facts, D.E. 139-2, will be referred to as "Plf. Supp. SOMF"; and Defendants' Response to Plf. Supp. SOMF, D.E. 141, will be referred to as "Def. Supp. SOMF."

[2] In this opinion, F&P, J&M, and Finkelstein will be referred to collectively as the "Law Firm Defendants."

[3] Finkelstein initially created three entities, Total Trial, CineTrial Solutions, LLC and MedTrial Solutions, LLC. Def. Supp. SOMF ¶ 1. The three entities were later combined into a single entity, Total Trial. Declaration of Lindsey H. Taylor, Ex. U, 9:19-10:11, D.E. 146-32. For simplicity, the Court refers to the entities collectively as Total Trial.

On December 7, 2017, the Harding Plaintiffs filed a renewed motion to consolidate the Harding and Smalls matters, arguing that the cases share factual allegations, legal claims, and parties, including the proposed classes. D.E. 116. The motion was granted on June 29, 2018 and the cases were consolidated. D.E. 127.

The Harding Plaintiffs also filed a motion for leave to file an amended complaint on December 21, 2017. The Harding Plaintiffs sought to amend the complaint to add allegations demonstrating that Total Trial is the alter-ego of F&P and Finkelstein. D.E. 118. The Harding Plaintiffs' motion was granted on July 11, 2018, D.E. 128, 129, and the Amended Complaint was filed on July 12, 2018, D.E. 130. Smalls was granted leave to file an amended complaint with virtually identical alter-ego allegations as to J&M, Finkelstein, and Total Trial on November 16, 2017, and her Second Amended Complaint was filed on November 27, 2017. Civ. No. 15-6559, D.E. 62, 63.

On December 31, 2018, Defendants sought leave to file a motion for summary judgment in the consolidated matter. In their letter request, Defendants discuss Plaintiffs' claim together but explained that they sought to dismiss the Hardings' claims on the merits and Smalls' claims as moot. D.E. 133. Defendants were granted leave to file the instant motion for summary judgment on March 22, 2019. The Order granting leave stated that "Defendants' motion for summary judgment is limited to the issues raised in [their] letter" and that "[i]f Defendants raise additional issues, they will be disregarded by the Court." D.E. 145 at 1-2 n.2. Defendants filed this motion for summary judgment on March 27, 2019. Defendants seek summary judgment dismissing all claims asserted by Plaintiffs on the merits, and also dismissing Smalls as a Plaintiff in this matter for lack of standing. D.E. 146. With respect to Defendants' arguments as to Smalls, because Defendants were explicitly informed that their motion for summary judgment must be limited to

3

the issues raised in their letter seeking leave to file, D.E. 145, the Court will only consider whether Smalls has standing in this matter. The Court does not consider Defendants' arguments that seek to dismiss any claim against Smalls on the merits.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## III. SUMMARY JUDGMENT ANALYSIS

### A. Lack of Standing

As discussed, Defendants seek to dismiss Smalls' claims for lack of standing. Def. Br. at 28-30. To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358–59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)). In this instance, Defendants focus on the third element – redressability – arguing that Smalls' claims are moot. "The doctrine of mootness requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) (quoting *N.J. Tpk. Auth. v. Jersey Cent. Power*, 772 F.2d 31 (3d Cir. 1985)). Accordingly, a claim can be moot if a plaintiff no longer has a cognizable interest in the outcome of the litigation. *Id.*

Defendants argue that Smalls' claims are now moot because three liens far exceed Smalls' maximum potential recovery in her personal injury lawsuit. As a result, Defendants continue, Smalls will never receive any portion of a recovery, meaning that the amount that she potentially owes for Total Trial's work is irrelevant. Def. Br. at 29-30; Def. Reply at 11.

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 100*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). J&M has a $41,646 lien against Smalls, Plf. Supp. SOMF ¶ 73; as of February 16, 2017, Smalls owed Cash4Cases $119,386.33 for an advance against the proceeds of her lawsuit recovery, *id.* ¶ 24; and as of November 5, 2014, there was a Nassau County Public Assistance lien against her in the amount of $11,737.30, *id.* ¶ 27, and a Nassau County Medicaid lien against her in the amount of $132,948.26, *id.* ¶ 25. But Smalls personal injury case has not yet been resolved, *id.* ¶ 72, and liens are negotiable and may even be waived.[4] As a result, while it seems highly unlikely that Smalls will personally recover any proceeds if her personally injury case is ultimately resolved in her favor, the Court cannot conclude with absolute certainty that it will be impossible to grant any relief to Smalls through this litigation. Defendants' motion for summary judgment is therefore denied as to Smalls for lack of standing.

### B. Alter Ego Allegations

The Harding Plaintiffs' claims are dependent on their allegations that Finkelstein, F&P, and Total Trial are alter-egos. Namely, Plaintiffs allege that Finkelstein misused the corporate form to overbill clients for work performed on clients' cases. Plaintiffs argue that in actuality,

---

[4] Without providing any factual support, Defendants state that it is undisputed that Smalls' maximum recovery in her personal injury case is $100,000 because that is the limit of the insurance policy of the driver of the car that Smalls was riding in when the underlying accident occurred. Def. Br. at 28. Even if the Court were to accept this fact as true, it would not impact the standing analysis.

6

Total Trial is not a separate entity and should be treated as part of F&P. Defendants maintain that Plaintiffs' veil piercing arguments fail because the entities are not alter-egos. Def. Br. at 13-15.

"Broadly speaking, the courts will disregard the corporate form, or ... 'pierce the corporate veil,' whenever necessary 'to prevent fraud or achieve equity.'" *Cortland St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 47 (2018) (quoting *In re Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140 (1993)).[5] Piercing the corporate veil does not create a new cause of action. Rather, it allows a court to go "behind the corporate existence in order to circumvent the limited liability of the owners and hold them liable for some underlying corporate obligation." *Id.* Thus, "a plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked, and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Id.* Veil-piercing, however, "is a fact-laden claim that is not well suited for summary judgment resolution." *First Bank of Ams. v. Motor Car Funding*, 257 A.D.2d 287, 294 (1st Dept. 1999)).

Courts consider a number of factors to determine whether there was complete domination. The factors include the following:

> [T]he disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors and personnel; common office space or telephone numbers; the degree of discretion demonstrated by the allegedly dominated corporation; whether dealings between the entities are at arm's length; whether the corporations are treated as independent profit centers; and the payment or guaranty of the corporation's debts by the dominating entity.

---

[5] The parties agree that New York law governs the veil piercing analysis as Total Trial and F&P were both formed pursuant to New York law. *See Med. Transcription Billing, Corp. v. QHR Techs. Inc.*, No. 16-8611, 2017 WL 3037388, at *2 (D.N.J. July 18, 2017) (explaining that New Jersey choice-of-law rules suggest "that [the] veil piercing analysis is governed by the law of the state of formation") (internal quotation omitted).

7

*Fantazia Int'l Corp. v. CPL Furs N.Y. Inc.*, 67 A.D.3d 511, 513 (1st Dept. 2009). No one factor is dispositive. *Id.* In addition, when dealing with closely held corporations, corporate formalities are more relaxed. Accordingly, "closely associated corporations, even ones that share directors and officers, will not be considered alter egos of each other if they were formed for different purposes, neither is a subsidiary of the other, their finances are not integrated, assets are not commingled, and the principals treat the two entities as separate and distinct." *Lee v. Arnan Dev. Corp.*, 77 A.D.3d 1261, 1262 (3d Dept. 2010) (quoting *Longshore v. Davis Sys. of Capital Dist.*, 304 A.D.2d 964, 965 (2003)).

Defendants argue that the only factors that weigh towards a finding of complete domination are that Finkelstein is a common owner and that he is the final decision maker of F&P and Total Trial. Defendants continue that these factors alone are insufficient to pierce the veil. Def. Br. at 13. The Court disagrees. Plaintiffs provide sufficient facts through which a reasonable jury could conclude that there was a disregard of the corporate form between Total Trial and F&P, such that piercing the corporate veil may be appropriate in this instance. For example, Total Trial was formed in 2009 but did not obtain its capital loan from F&P until 2012. Plf. SOMF ¶ 36. Finkelstein has a 70% interest in Total Trial, Def. Supp. SOMF ¶ 17, and has "final-decision making authority over every aspect of Total Trial's business," *id.* ¶ 20. Moreover, Total Trial operated out of F&P's headquarters pursuant to an oral lease until 2014. *Id.* ¶ 10. In addition, F&P and Total Trial share the same 401(k) plan, and the 2015 Form 5500 describes the plan as a "single employer plan" and list F&P as the employer. *Id.* ¶ 15. The entities also share a computer system through which Total Trial employees can access F&P's electronic client files. *Id.* ¶ 23. F&P's CFO also oversees Total Trial's accounting and bookkeeping, which includes processing payroll, invoices and checks, and Total Trial's general ledger. *Id.* ¶ 26. Finally, F&P shares an

online banking system with Total Trial. Def. Response to Plf. SOMF ¶ 43.

Turning to Plaintiffs' allegations of inequitable conduct, to pierce the corporate veil, Plaintiffs must allege that Defendants misused the corporate form; and that doing so caused a fraud or injustice. *Tap Holdings, LLC v. Orix Fin. Corp.*, 109 A.D.3d 167, 174 (1st Dept. 2013). In other words, "evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance." *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 349 (1998). Finkelstein modeled Total Trial after a business model that was utilized by a former J&M attorney while at his prior firm. Def. Supp. SOMF ¶ 2. In early 2009, during discussions about the attorney's potential move to J&M, the attorney told Finkelstein how he had utilized Total Trial at his firm. *Id.* ¶ 5. Moreover, the attorney provided Finkelstein with a memorandum stating that Total Trial could generate profits for J&M and avoid the prohibition on certain profit-making activity for law firms. *Id.* ¶¶ 6-7. Finkelstein formed Total Trial on March 31, 2009, and the entity worked exclusively for the Law Firm Defendants from 2009 through 2012. *Id.* ¶¶ 1, 22. In 2013 and 2014, Total Trial performed over 99% of its services for the Law Firm Defendants. *Id.* ¶ 22. In addition, the Law Firm Defendants did not create "biographies" for their clients before the formation of Total Trial. *Id.* ¶ 56. This evidence is sufficient for a reasonable juror to conclude that F&P used Total Trial, a technically separate entity, to cause a fraud or injustice by allegedly making a profit off of work that was previously performed by F&P and covered by F&P's contingency fee.

Defendants argue that the wrongful or inequitable conduct must be separate and apart from the wrongdoing alleged in the complaint. Def. Br. at 11. Defendants' argument, however, is not supported by New York law. Under the alter-ego theory of veil-piercing, the corporate veil may be pierced when multiple corporate entities disregard the corporate form and conduct business as

a single entity, and that doing so caused the alleged harm. *See, e.g., In re 91st Street Crane Collapse Litig.*, 154 A.D.3d 139, 151 (1st Dept. 2017) (concluding that there was sufficient evidence to pierce the veil to hold individual liable where that "one individual exercised domination and control over three separate corporations which he treated as one entity"); *Cobalt Partners, L.P. v. GSC Cap. Corp.*, 97 A.D.3d 35, 41 (1st Dept. 2012) (explaining that allegations that corporation used its alter ego to "breach a contractual obligation for personal gain" were sufficient to state a claim for breach of contract). That is precisely what the Harding Plaintiffs allege here. The Harding Plaintiffs contend that Finkelstein used Total Trial to increase F&P's profits, and that doing so was, among other things, a breach of Finkelstein and F&P's fiduciary duties. And as will be discussed below, there is a material issue of fact as to whether Finkelstein and F&P breached their fiduciary duties, the Hardings' retainer agreements, and violated GBL § 349. Accordingly, Defendants' motion for summary judgment to dismiss the alter ego allegations is denied.

### C. Breach of Fiduciary Duty (Count One)

Defendants seek summary judgment dismissing the Harding Plaintiffs' fiduciary duty claims, which are premised on violations of the New York Rules of Professional Conduct (the "RPCs").[6] "Every attorney admitted to the Bar must strictly follow and subscribe to the provisions of the Code of Professional Responsibility which was designed to protect the special relationship between attorneys and their clients." *Grunberg v. Feller*, 132 Misc.2d 738, 741 (N.Y.C. Civ. Ct. 1986). But there is no private right of action for a breach of the PRCs. *Weintraub v. Phillips, Nizer, Benjamin, Krim, & Ballon*, 172 A.D.2d 254, 254 (1st Dept. 1991). Moreover, an alleged

---

[6] RPC 8.5 provides that "[a] lawyer admitted to practice in [New York] is subject to the disciplinary authority of this state, regardless of where the lawyer's conduct occurs." 22 N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.0, Rule 8.5. While not addressed by the parties, the Court assumes that Finkelstein is admitted to practice law in New York; he works for two law firms that are located in New York.

violation of the RPCs "does not, without more, generate a cause of action" for breach of an attorney's fiduciary duty. *Schwartz v. Olshan Grundman Frome & Rosenzweig*, 302 A.D.2d 193, 199 (1st Dept. 2003). To establish a breach of fiduciary duty, "a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *Daly v. Kochanowicz*, 67 A.D.3d 78, 95 (2d Dept. 2009) (quoting *Kurtzman v. Bergstol*, 40 A.D.3d 588, 590 (2d Dept. 2007).[7] A violation of the RPCs, however, may provide evidence as to an attorney's breach of his fiduciary duty. *Galasso, Langione, & Botter, LLP v. Galasso*, 53 Misc.3d 1202(A), 2016 WL 5108641, at *42 (Sup. Ct., Nassau Cty. Sept. 19, 2016).

The parties do not dispute that F&P and Finkelstein had a fiduciary relationship with the Hardings. *See Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 8-9 (1st Dept. 2008) (stating that the attorney-client relationship is "inherently fiduciary"). The parties also do not appear to dispute that, at this stage, Plaintiffs were damaged by the alleged wrongful conduct. As a result, the Court focuses on Finkelstein and F&P's purported misconduct.

Plaintiffs contend that Finkelstein and F&P's use of Total Trial to bill clients for non-billable services violated RPC 1.5, 1.7, 1.8 and 5.7, and that these violations amount to a breach of these Defendants' fiduciary duties. RPC 1.5 addresses fees and expenses that an attorney may charge his clients. Among other things, the RPC states that an attorney shall not agree to, charge or collect an excessive fee. 22 N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.0, Rule 1.5. In addition, in personal injury and wrongful death matters, if an attorney and client agree to a contingency fee, the contingency fee cannot exceed 33 1/3% of the recovery. N.Y. Rules of Court

---

[7] The parties have not provided any choice of law analysis and appear to presume that New York substantive law applies to all of Plaintiffs' claims. Accordingly, the Court will also apply New York substantive law.

11

§ 806.27(b). The Hardings' retainer agreements both provided that they would pay F&P a contingency fee of 33 1/3% of any recovery, and that the fee would be calculated after F&P's costs and expenses were deducted from the total recovery. Def. SOMF ¶¶ 15-16. Plaintiffs do not dispute that F&P is entitled to its 33 1/3% recovery fee and that expenses were deducted from their total recovery. Thus, on its face, there does not appear to be a violation of RPC 1.5.

Plaintiffs, however, contend that in actuality, Finkelstein and F&P improperly collected more than 33 1/3% of the recovery because Defendants had Total Trial perform legal work that should have been included in the contingency fee and marked up the costs of the non-legal fees that Total Trial performed. The RPCs "provide no specific guidance on the issue of how much a lawyer may charge a client for costs incurred over and above her own fee." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 93-379 (Dec. 6, 1993). But while not binding authority, the ABA guidance provides that the reasonableness standard for fees, as set forth in RPC 1.5, should apply to costs and expenses incurred by an attorney. *Id.* Thus, the guidance continues, "it would be improper if the lawyer assessed a surcharge on these disbursements over and above the amount actually incurred unless the lawyer herself incurred additional expenses beyond the actual cost of the disbursement item." *Id.*; *see also* Ass'n of the Bar of the City of New York Comm. on Prof'l & Judicial Ethics, Formal Op. 2006-3 at 7 (Aug. 1, 2006) (explaining that when outsourcing legal support services overseas, an attorney should "charge the client no more than the direct cost associated with outsourcing, plus a reasonable allocation of overhead expenses directly associated with providing that service) (citing ABA Formal Opinion 93-379).

Here, both retainer agreements stated that F&P was "authorized to incur reasonable costs and expenses in performing legal services." *See* Def. Supp. SOMF ¶ 44. Plaintiffs, however, argue that the amounts that they paid for Total Trials' work product was not reasonable. For

example, F&P engaged Total Trial to write a biography for both of the Hardings' personal injury cases. Total Trial charged F&P $200 per hour for this service, however, the employee that wrote the Hardings' biographies earned just $20 per hour. *Id.* ¶¶ 45-46, 51-52. The amount that Total Trial billed F&P for the biographies, $2,600 in both cases, was deducted from the Hardings' recoveries before F&P's contingency fee was calculated. *Id.* ¶¶ 45, 50, 55. A reasonable jury could conclude that these charges amount to a surcharge for non-legal expenses. Although this is technically not a violation of RPC 1.5, it could still be sufficient for a reasonable jury to determine that F&P breached its fiduciary duty. *See Galpern v. De Vos & Co. PLLC*, No. 10-1952, 2011 WL 4597491, at *10 (E.D.N.Y. Sept. 30, 2011) (denying motion for summary judgment for claim related to overbilling clients for consultants where "supporting affidavits adequately alleged facts that, taken in the light most favorable to [clients], establish that they overpaid for the services rendered").[8]

Plaintiffs also assert a claim for aiding and abetting a breach of a fiduciary duty as to Total Trial. A claim for aiding and abetting a breach of fiduciary duty requires "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damages as a result of the breach." *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dept. 2003). There is sufficient evidence for a reasonable jury to determine that Total Trial participated in F&P and Finkelstein's breach of their fiduciary duties as Total Trial provided F&P with invoices that included the purportedly unreasonable fees and expenses that were ultimately paid by the Hardings.

---

[8] Plaintiffs maintain that Defendants additionally violated RPCs 1.7, 1.8 and 5.7, and that these violations also amount to a breach Finkelstein and F&P's fiduciary duties. Because the Court finds that a reasonable jury could conclude that these Defendants breached their fiduciary duties based on RPC 1.5, the Court does not address the remaining RPCs in this Opinion.

Finally, Defendants argue that the fiduciary duty claim must be dismissed because it is duplicative of the Harding Plaintiffs' breach of contract claim. Def. Br. at 21. A claim for breach of a fiduciary duty "that merely restate[s] contract claims must be dismissed." *Bullmore v. Ernst & Young Cayman Is.*, 45 A.D.3d 461, 463 (1st Dept. 2007). Professionals who owe fiduciary duties to their client, however, may be subject to tort liability independent from their contractual obligations as "it is policy, not the parties' contract, that gives rise to a duty of due care." *Id.* In such a situation, even if the underlying wrongful conduct is the same, a breach of fiduciary duty claim is not duplicative of a breach of contract claim. *Id.*; *see also Sally Lou Fashions Corp. v. Camhe-Marcille*, 300 A.D.2d 224, 225 (1st Dept. 2002) (explaining that "the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself"). That is the case here. Thus, the Harding Plaintiffs' breach of fiduciary duty claim are not be dismissed as duplicative.[9]

### D. Breach of Contract (Count Two)

Next, Defendants seek to dismiss the Harding Plaintiffs' breach of contract claims, arguing that Defendants fully performed under the retainer agreements. Def. Br. at 22. The "essential elements" for a breach of contract claim pursuant to New York law "are the existence of a contract,

---

[9] In their reply brief, Defendants focus on the fact that the breach of contract and breach of fiduciary duty claims seek the same damages – the amount that the Hardings were overbilled. Def. Reply at 9. If Plaintiffs are ultimately successful on their breach of fiduciary duty and breach of contract claims, they will not be able to recover twice. *See Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 218 (3d Cir. 1992) ("Simply because TINS was able to wrap that loss into several different legal theories of recovery does not entitle it to recoup twice. Thus the district court may appropriately award a single compensatory damage figure, which might, upon retrial represent the jury award arising from the breach of contract claim, compensatory tort damages, or the antitrust damages prior to trebling."). Accordingly, the Court will not dismiss the fiduciary duty claim based on a risk of duplicative damages. If necessary, the Court will mold the relevant verdict to prevent double recovery.

the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *Tudor Ins. Co. v. Unithree Inv. Corp.*, 137 A.D.3d 1259, 1259 (2d Dept. 2016). As discussed, the Hardings' retainer agreements both provide that Plaintiffs would pay a contingency fee of 33 1/3% of any recovery, and that the fee would be calculated after reimbursement of F&P's reasonable costs and expenses were deducted from any recovery. Def. SOMF ¶¶ 15-16, 20. In their breach of contract claim, Plaintiffs allege, among other things, that F&P and Finkelstein breached the retainer agreements by forcing the Hardings to pay a surcharge on Total Trials' non-legal work. Am. Compl. ¶ 107, D.E. 130. If a jury determines that Defendants marked-up the cost of Total Trial's work, the jury could also conclude that F&P breached the retainer agreements by charging the Hardings for unreasonable expenses. Thus, there is a genuine dispute of material fact as to whether F&P breached the retainers.

Plaintiffs also argue that "[b]ecause F&P used [Total Trial] to charge its clients excessive fees . . . , offset overhead, and earn profit on costs and expenses, F&P violated the retainer." Plf. Opp. at 26. As noted, unreasonable expenses would apparently result in a breach of the retainer agreement. Such conduct may also amount to a breach of the implied covenant of good faith and fair dealing rather than a violation of an express term of the retainer agreements.[10] Under New York law, "all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002). The implied covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* "While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of

---

[10] For example, and as noted, unreasonable expenses would apparently result in a breach of the retainer agreement.

15

the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Id.* (internal quotations and citations omitted).

This Court already concluded that there is a genuine issue of material fact as to whether Defendants unreasonably marked-up the cost of services provided by Total Trial, which is turn reduced the amount that the Harding Plaintiffs ultimately recovered from their personal injury cases. A jury may, alternatively, determine that the complained of counduct amounts to a breach of the implied covenant of good faith and fair dealing.[11] As a result, Defendants' motion is denied with respect the breach of contract claims.

### E. GBL § 349 (Count Three)

In Count Three, the Harding Plaintiffs assert a claim against F&P and Finkelstein for "deceptive business practices" under GBL § 349(a). Defendants also seek summary judgment dismissing Plaintiffs' § 349 claim.

Section 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). To succeed on a § 349 claim, a plaintiff must prove "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."[12] *Stutman v.*

---

[11] "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Accordingly, at trial, Plaintiffs may be able to recover for breach of contract or breach of the implied covenant, but not both.

[12] Defendants do not appear to contest that the Retainer Agreements were consumer-orientated or challenge that Plaintiffs were damaged.

*Chem. Bank*, 95 N.Y.2d 24, 29 (2000). A deceptive act or practice is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)). Plaintiffs allege that among other things, the Retainer Agreements were deceptive because although they limit F&P to incurring only "reasonable costs and expenses," F&P and Finkelstein imposed unreasonable charges on every client by using Total Trial. Again, there is a genuine issue of material fact as to whether the Finkelstein and F&P unreasonably marked-up non-legal fees from Total Trial. Accordingly, a reasonable jury may conclude that this constitutes a deceptive act or practice in violation of GBL § 349.[13]

### F. Unjust Enrichment (Count Four)

Defendants also seek summary judgment dismissing the Harding Plaintiffs' unjust enrichment claims because the dispute is covered by the parties' retainer agreements. Def. Br. at 27. "[T]he existence of a valid and enforceable contract precludes an unjust enrichment claim relating to the subject matter of the contract." *Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532, 545 (S.D.N.Y. 2013). In their unjust enrichment claim, Plaintiffs allege that Defendants received a benefit through the Total Trial fees for which they were ultimately responsible. Am. Compl. ¶ 125. The parties, however, do not dispute that the retainer agreements were valid, enforceable contracts. Further, this Court already concluded that the alleged wrongful conduct is encompassed in Plaintiffs' breach of contract claim. Therefore, Plaintiffs' unjust enrichment claim is duplicative as it is premised on the same rights and

---

[13] Plaintiffs allege that F&P and Finkelstein engaged in other deceptive acts and Defendants also seek to dismiss Count Three on these additional grounds. Because the Court concludes that there is a genuine issue of material fact as to the allege mark-up of non-legal fees, the Court does not need to address the parties' remaining GLB § 349 arguments.

17

obligations as the breach of contract claim. Summary judgment, therefore, is granted to Defendants as to Count Four.

## IV. MOTION TO STRIKE

In a separate motion, Defendants seek to strike Plaintiffs' expert, Andrew Bluestone, because his report contains inadmissible net opinions and legal opinions, and is not based upon the evidence. D.E. 157. Because the Court did not rely on Bluestone's expert report to decide this motion for summary judgment, the motion to strike is denied without prejudice. Defendants may refile the motion to strike as a motion in limine before trial.

## V. CONCLUSION

For the reasons stated above, and for good cause shown, Defendants' motion for summary judgment (D.E. 146) is **GRANTED in part and DENIED in part**. Defendants' motion to strike (D.E. 157) is **DENIED without prejudice**. An appropriate Order accompanies this Opinion.

Dated: January 28, 2020

                                                            John Michael Vazquez, U.S.D.J.